ANDREW VANDEN BROUCKE AND ANOTHER v. LYON COUNTY, MINNESOTA, AND ANOTHER.

222 N. W. 2d 792.

October 18, 1974—No. 44520.

*Molter & Runchey* and *Robert C. Runchey,* for appellants.

*Grose, Von Holtum, Von Holtum, Sieben & Schmidt* and *Douglas E. Schmidt,* for respondents.

Heard before MacLaughlin, Yetka, and Scott, JJ., and considered and decided by the court en banc.

SCOTT, JUSTICE.

This is an action arising out of an automobile accident on a bridge located in and owned and maintained by Lyon County. The jury found that Lyon County and its agents or employees were 100-percent negligent in the maintenance or care of the bridge, and that this negligence was the direct cause of the accident. The plaintiffs were found not to be negligent. The defend-

ants' motion for judgment notwithstanding the verdict or, in the alternative, for a new trial, was denied. It is from this denial that the defendants appeal. We affirm the trial court.

The accident occurred at approximately 2:30 a. m., April 13, 1969, at a bridge site located on Lyon County Road No. 66 over Coon Creek. The road approaching the bridge is of a gravel surface, while the bridge is surfaced with concrete. The Vanden Broucke farm is 1/4 mile south of the bridge.

During the preceding winter months, the area had received one of the heaviest snowfalls in its history, with Lyon County receiving a total fall of 80 inches and the closely situated Lincoln County having 42 inches, the highest recording of accumulated snow. This occurred during the period from January to April 8, 1969. Following the last of these snowfalls, there was a period of warming temperatures which caused rapid melting and created the danger of flooding to the whole area. The flood on the Redwood River crested at Marshall at approximately 12 noon on April 9, 1969, about 3 1/2 days prior to the accident in question. The crest on the Yellow Medicine River occurred before that on the Redwood River.

There is evidence that approximately 18 bridges suffered major washouts in Lyon County during this flood—13 of which were completely beyond repair. As well, several other bridges were damaged in some way. Defendant Virgil Johnson, county highway engineer, stated that the majority of the damage to the other bridges had occurred by April 11, 1969. On that date, he made an inspection of the bridge in question at 4:30 p. m., while the bridge allegedly became disengaged late in the evening of April 12 or early in the morning of April 13. Defendant Johnson admitted that at the time of the inspection he knew of various damage through the county and that he was aware of the tendency of Dead Coon Lake to fill up until it could hold no more, at which point it would overflow large amounts of water into Coon Creek. He also had knowledge of the sandbagging of that same creek during the 1957 flood.

Johnson's inspection was visual only, and he observed that the water was fairly high and moving at a rapid pace. He stated he was unable to view the status of the water below the surface because it was discolored and he did not attempt to further inspect this underwater condition. It is interesting to note that he stated that the cause of the bridge failure was the erosion of support abutments by strong, fast, and constant water pressure. He stated that he might have made comparisons with pre-flood-condition statistics, but that he failed to do so, and that measuring to so compare would not have taken any substantial time. Johnson admits that the volume and speed of the water were enough to do the resultant damage.

Johnson failed to see any signs of erosion. Carrol Schenck, another county highway employee, upon inspection in the late afternoon of April 12, 1969, was also unable to discern any washing beneath the bridge. Two other witnesses refute this testimony: Clarence Hall observed erosion near the southwest corner of the bridge only hours after Johnson's inspection. This was substantiated by Keith Pochardt's observations after the bridge failed.

Plaintiff called Douglas Barr as an expert witness with training and education in civil and hydraulic engineering. He concluded, in response to a hypothetical question, that the bridge failure was due to erosion of the support or abutment, that this was a gradual process taking several days, and that it was probably in process when defendant Johnson inspected the bridge. He concluded that this erosion was detectable by the use of an ordinary stick or pipe as a probe and that a visual inspection would not be adequate for this purpose.

On the evening of the accident, the Vanden Brouckes had crossed the bridge at about 7 p. m. on their way to work. Mrs. Vanden Broucke was operating the vehicle at approximately 40 to 45 miles per hour on their return home at 2:30 a. m. when they came upon the bridge, were unable to stop, and collided or fell into the precipice left by the collapse of the bridge.

A motion for a directed verdict by the defendants at the close

of the plaintiffs' case was made and denied and was repeated at the end of the defendants' case and again denied.

The jury awarded damages as follows: Margaret Vanden Broucke, $1,000 medical expenses and other damages in the amount of $3,500; Andrew Vanden Broucke, $687.50 as damages to his automobile and $30,000 other total damages.

The appellants raise the following issues:

1. Did the lower court err in denying defendants' motion for a change of venue back to Lyon County following dismissal of the case against the county commissioners?

2. Did the lower court err in refusing to grant the defendants' motion for a directed verdict?

3. Should the jury have been instructed with regard to the defense of assumption of risk according to defendants' requested instructions?

4. Did the lower court err in denying defendants' request for instructions with regard to "act of God" and their theory of the case?

■ This action was originally commenced in Lyon County, the county in which the cause of action arose, under Minn. St. 542.09. Plaintiffs then moved for a change of venue, pursuant to Minn. St. 542.11 (3, 4), on the specific grounds that an impartial trial could not be had in Lyon County and to promote the ends of justice. The motion was granted and withstood subsequent attempts to change venue through a writ of mandamus[1] and a motion for change of venue[2] by the defendants. The lower court initially moved the case because it determined that a fair trial could not be obtained in Lyon County because of the representative relationship of the county residents and the county

---

[1] This court denied the writ of mandamus, stating that there had been no abuse of the trial court's discretion in the original change of venue.

[2] The motion for change of venue back to Lyon County was denied on January 20, 1972, on the ground that the inconvenience to witnesses by the trial in Murray County was substantially less than the need to promote the ends of justice.

board members and the financial interests which would arise. When subsequently the cause of action against the county commissioners was dismissed, the defendants felt that any basis for the original change of venue had been removed, and the case, therefore, should be reassigned to Lyon County.

The standard to be applied by this court in determining the propriety of the granting of the motion for a change of venue on the above grounds is that it rests within the sound discretion of the trial court, and can be disturbed only upon a clear showing of abuse. Thies v. Midland Co-op. Wholesale, Inc. 254 Minn. 369, 95 N. W. 2d 307 (1959); Fara v. G. N. Ry. Co. 269 Minn. 573, 130 N. W. 2d 142 (1964). In view of the facts before this court, we do not find the clear abuse of discretion necessary to warrant reversal.

■ This court has held that a motion for a directed verdict presents a question of law regarding the sufficiency of the evidence to present a fact question for the jury to determine. If there is a fact question under all the evidence, the motion should be denied. Jacoboski v. Prax, 290 Minn. 218, 187 N. W. 2d 125 (1971). The evidence here is more than adequate to create an issue of fact for the jury's determination. The court in its memorandum accompanying the order denying post-trial motions stated as follows:

"* * * The facts support the finding that, among other things, one, Defendants were negligent in failing to adequately inspect the bridge during this period of high water and thus did not find evidence of washing or erosion in the abutment area of the bridge. * * *

"Two, that in light of the Defendants' knowledge of the high and dangerous water conditions existing for many days, the collapse and inundation of many bridges and roads in the county during the previous week or so, the Defendants were negligent in failing to barricade the road and bridge in question to prevent public use thereof until after the high water had [receded]

to a point to allow an adequate inspection and testing for safety before further use by the public."

■ The elements necessary to the establishment of the defense of assumption of risk have long been accepted in this state as the following: (1) Knowledge and (2) appreciation of a danger and (3) voluntarily incurring the danger after having an opportunity to avoid it. Minnesota Jury Instruction Guides (1 ed.) Instructions 135, 136; Tatro v. Carlson, 271 Minn. 536, 137 N. W. 2d 187 (1965). In the case of Springrose v. Willmore, 292 Minn. 23, 192 N. W. 2d 826 (1971), the court held that, as to causes of action arising thereafter, assumption of risk would no longer be considered as a separate defense but would be considered as an aspect of contributory negligence. This holding is inapplicable here.

An application of these elements indicates that the evidence submitted does not establish this defense for jury consideration. The defendants would have had to show that the plaintiffs knew that the particular bridge was dangerous and that they chose that particular route over an available, safer route. Constructive knowledge that various bridges in the area had been damaged by high water is not enough under this theory. There is no evidence that the plaintiffs knew that erosion had affected the support for the south abutment of this bridge. This evidence is essential and its lack supports the lower court's denial of the motion for leave to amend the pleadings and to submit the issue upon instructions for jury consideration.

■ To fall within the purview of the doctrine of "act of God," an event resulting from the force of nature must be both unexpected and unforeseeable. Swanson v. LaFontaine, 238 Minn. 460, 57 N. W. 2d 262 (1953). It must further be the sole cause of the accident. Sauer v. Rural Co-op. Power Assn. 225 Minn. 356, 31 N. W. 2d 15 (1948). Under this theory, the exercise of all reasonable care could not protect from resultant harm. There was substantial evidence of numerous other bridges suf-

fering damage prior to that of the bridge in question. The jury found that the inspections made were less than adequate. This finding is more than supported by the evidence. The lower court's denial of instructions as to the "act of God" theory is further supported by the complete lack of proof that the event of the flooding was unexpected and that the harm could not have been prevented by an exercise of care commensurate with the known danger.

The defendants' theory of the case, as well as that of the plaintiffs, clearly puts at issue the question of causation. Clearly, the main consideration for this court with regard to analysis of this issue is whether the jury was adequately apprised of the matters for their determination, i. e., whether the instructions clearly and concisely set forth the standards to be utilized in a resolution of the claims and evidence of the plaintiffs balanced with the defenses and evidence of the defendants. A careful reading of the instructions leads to the conclusion that the jury was so instructed.

Affirmed.