## LYNDER LAMBERTSON v. CINCINNATI CORPORATION. HUTCHINSON MANUFACTURING AND SALES, INC., THIRD-PARTY DEFENDANT.

257 N. W. 2d 679.

February 4, 1977 — Nos. 45790, 45810.

*Lasley, Gaughan, Reid & Stich* and *Robert T. Stich,* for appellant.

*Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, O. C. Adamson II,* and *Mary Jeanne Coyne,* for respondent plaintiff.

*Fitch & Johnson* and *Raymond W. Fitch,* for respondent third-party defendant.

SHERAN, CHIEF JUSTICE.

Cincinnati Corporation, defendant and third-party plaintiff in a personal injury/product liability action, appeals from a judgment of the district court which awarded a worker $34,000 in damages but denied defendant manufacturer contribution from an employer which was partly at fault for the accident. We reverse in part and remand with instructions.

Cincinnati is the manufacturer of a press brake, a large machine used for bending metal. The break has a large vertical ram which moves up and down. Dies are placed on the ram and on the bed of the machine, and metal to be bent is placed between the ram and the bed. When the ram comes down onto the metal, a bend, or brake, is made in the metal at the point where the die on the ram matches the die in the bed. The movement of the ram is controlled by the operator by means of a single foot pedal at the base of the machine.

Cincinnati sold a press brake to Hutchinson Manufacturing and Sales, Inc., plaintiff's employer. On April 25, 1972, plaintiff was assisting a coemployee in the operation of the press brake. The coemployee was controlling the foot pedal, and plaintiff was placing long metal strips between the ram and the bed and removing them after they had been bent. As the ram was being raised after one cycle, a piece of metal which had been bent fell to the side of the bed opposite to the side where plaintiff was working. Plaintiff reached through the jaws of the machine to retrieve the piece of metal, but his coemployee had kept his foot on the pedal, thus permitting the ram to descend again, crushing plaintiff's arm between the ram and the bed.

After recovering workers' compensation from Hutchinson, plaintiff brought this action against Cincinnati. Plaintiff testified that he had never operated the press brake before and did not know it was capable of double cycling, i.e., continuing through another cycle without the ram's stopping at the top. He testified that he knew he should not have put his arm between the jaws, but that he did not know that his coemployee still had his foot on the pedal or that the ram would descend again before he could retrieve the piece of metal.

Plaintiff introduced expert testimony and safety rules and regulations from which the jury could have found that certain safety devices and features could have been installed on the press brake at the time of its manufacture and sale to Hutchinson in 1967, and that such devices would have prevented the accident. Sufficiency of this evidence to support a finding of negligence on the part of Cincinnati is not contested on this appeal. Cincinnati does, however, ask for indemnity from Hutchinson based on events occurring after 1967.

In 1969, after representatives of Cincinnati viewed the particular uses to which the press brake was put at Hutchinson, Cincinnati offered to Hutchinson (at Hutchinson's expense) two changes in the machine: (1) Operation by two or more palm buttons or foot switches; (2) automatic stoppage of the ram at the

top of the cycle—i. e., no double cycling. These changes apparently were declined. In 1971, Cincinnati sent out a sales pamphlet to all owners of its press brakes describing a Waveguard safety device, an electronic sensing device designed to detect foreign matter in the press and stop the press if such matter were present. Hutchinson did not order or install such a device. There was testimony by plaintiff's expert from which one could conclude that the absence of two of these offered features—the automatic stop and the electronic sensor—constituted defects in the machine that were causally related to this accident.

When plaintiff's left forearm was crushed in the press brake, both bones were broken in such a way that the lower part of the arm was at a 90-degree angle to the upper part. It took 5 to 6 minutes to reverse the press and extricate his arm. He reported considerable pain. The fractures were surgically set and he was hospitalized initially for 10 days. During the succeeding 2 months his cast had to be removed and replaced 5 times so that the wound could be cleaned and X-rays taken. The fractures did not unite properly, and subsequent surgery was necessary. The bones were reset, using steel plates and screws. Plaintiff remained in a cast until February 1973, received medication for pain, and underwent physical therapy to regain the use of his arm. He was unable to work for a year after the accident and sustained an approximately $6,000 wage loss plus $2,600 in medical expenses.

The case was submitted to the jury on special verdict on a theory of negligence. The jury found all parties causally negligent and apportioned their comparative negligence as follows: Plaintiff—15 percent; Cincinnati—25 percent; Hutchinson—60 percent. The jury found damages of $40,000. The trial court ordered judgment against Cincinnati for $34,000, the full amount of the verdict less 15 percent for plaintiff's negligence, and denied Cincinnati's claim for contribution or indemnity from Hutchinson.

Four issues are raised on appeal:

(1) Did the trial court err in admitting certain safety regulations and excluding others?

(2) Did the trial court err in refusing to instruct on assumption of risk?

(3) Was the jury's award of $40,000 damages excessive?

(4) Did the trial court err in refusing to grant contribution or indemnity to Cincinnati?

■ Cincinnati challenges three evidentiary rulings of the trial court: (1) Admission of a 1960 American Standard Safety Code section on power presses; (2) withdrawal of a 1971 American National Safety Standard Requirement; and (3) exclusion of a 1973 American National Standard Safety Requirement for the Construction, Care and Use of Power Press Brakes. The trial court adopted a consistent approach in ruling on the proffered safety standards. It excluded all standards promulgated after 1967, the date of manufacture of the press involved in the instant case, apparently on the theory that Cincinnati could not be held accountable for such standards. It admitted the 1960 standard, based on expert testimony that it applied to Cincinnati's 1967 press. The manufacturer made no offer of proof below nor any argument in this court that shows the trial court's approach to be so clearly wrong as to constitute an abuse of its broad discretion in deciding upon the relevancy of evidence. Since no such showing is made, we reject the manufacturer's argument.

■ Cincinnati further assigns as error the failure of the trial court to instruct on assumption of risk. Since this was a post-Springrose v. Willmore (292 Minn. 23, 192 N. W. 2d 826 [1971]) case, assumption of risk would not have been submitted as a separate defense in any event, but would have been apportioned with comparative negligence. In our recent decision in Evanson v. Jerowski, 308 Minn. 113, 241 N. W. 2d 636 (1976), we approved and applied the definition and elements of assumption of risk as set forth in 4 Hetland & Adamson, Minnesota Practice, Jury Instruction Guides (2 ed.), Instruction 135 S:

"Assumption of risk is *voluntarily* placing (oneself) (one's property) in a position to chance known hazards. To find that a person assumed the risk you must find:

"1. That he had knowledge of the risk.

"2. That he appreciated the risk.

"3. That he had a choice to avoid the risk or chance it and voluntarily chose to chance it." (Italics supplied.)

Applying this test, there is no evidence in the record that the employee voluntarily chose to encounter a known risk. The employee testified that he did not know that his coemployee's foot was still on the pedal and that he did not know that the machine could double cycle without stopping. While the employee did exclaim in the moments immediately following his injury that he should not have reached through the machine, the manufacturer points to no evidence that would permit a jury to infer that he was fully aware of how the machine operated and yet tried to reach in and out fast enough to avoid the ram. Absent this kind of evidence, a line of recent decisions of this court holds that submission of or a finding of assumption of risk is improper. See, e. g., Olson v. Hansen, 299 Minn. 39, 216 N. W. 2d 124 (1974); Vanden Broucke v. Lyon County, 301 Minn. 399, 222 N. W. 2d 792 (1974); Parr v. Hamnes, 303 Minn. 333, 228 N. W. 2d 234 (1975). Therefore, failure to instruct on assumption of risk was not error in the instant case.

■ Defendant also asserts that the damage award was excessive. The trial court has broad discretion in determining whether a new trial should be granted for excessive damages. Bisbee v. Ruppert, 306 Minn. 39, 235 N. W. 2d 364 (1975). Here, there were $8,000 to $9,000 of special damages, two operations, a year's absence from work, evidence of extreme pain, and evidence of a continuing 15-percent disability despite current employment. In light of these facts, the trial court reasonably found that $40,000 was not excessive.

■ The final and most important issue in this case concerns the claim of Cincinnati, a third-party tortfeasor, for indemnity or contribution from Hutchinson, plaintiff's employer. This issue is a troublesome one and has generated a substantial amount of debate in the bench and bar of this and other states. Arthur Lar-

son, a leading commentator on workmen's compensation law, has called the controversy surrounding indemnity and contribution against employers in third-party actions "[p]erhaps the most evenly-balanced controversy in all of compensation law." 2A Larson, Workmen's Compensation Law, § 76.10. The essence of the controversy is this: If contribution or indemnity is allowed, the employer may be forced to pay his employee—through the conduit of the third-party tortfeasor—an amount in excess of his statutory workers' compensation liability. This arguably thwarts the central concept behind workers' compensation, i. e., that the employer and employee receive the benefits of a guaranteed, fixed-schedule, nonfault recovery system, which then constitutes the exclusive liability of the employer to his employee. See, Minn. St. 176.031. If contribution or indemnity is not allowed, a third-party stranger to the workers' compensation system is made to bear the burden of a full common-law judgment despite possibly greater fault on the part of the employer. This obvious inequity is further exacerbated by the right of the employer to recover directly or indirectly from the third party the amount he has paid in compensation regardless of the employer's own negligence. Minn. St. 176.061, subds. 5, 6(d). See, Nyquist v. Batcher, 235 Minn. 491, 51 N. W. 2d 566 (1952). Thus, the third party is forced to subsidize a workers' compensation system in a proportion greater than his own fault and at a financial level far in excess of the workers' compensation schedule.

The even balance in this controversy results from conflicts among the policies underlying workers' compensation, contribution/indemnity, and comparative negligence and the fault concept of tort recovery. Workers' compensation, a creature of Minnesota law since 1913, subjects almost all employers and employees to an essentially nonfault recovery system for accidents arising out of and in the course of employment. In exchange for guaranteed compensation for injury regardless of his own fault or the solvency of at-fault fellow employees, the employee is limited to a fixed schedule of recovery and gives up any right

to a common-law action against the employer. See, Minn. St. 176.-021, 176.031. This court has indicated on many occasions that the purpose of workers' compensation is broadly remedial and that workers' compensation laws are to be construed to favor employee recovery of benefits. Carey v. Stadther, 300 Minn. 88, 219 N. W. 2d 76 (1974); Sandmeyer v. City of Bemidji, 281 Minn. 217, 161 N. W. 2d 318 (1968); Nyberg v. Little Falls Black Granite Co. 192 Minn. 404, 256 N. W. 732 (1934); Kaletha v. Hall Mercantile Co. 157 Minn. 290, 196 N. W. 261 (1923).

Despite its essential nonfault character, the workers' compensation system retains an important common-law aspect—the third-party action. See, Minn. St. 176.061. The employee, and in some instances the employer, is allowed to bring an action against a third party who is legally responsible for the employee's injury. Such an action accomplishes two beneficial results for the workers' compensation system: (1) The at-fault third party is made to reimburse the employer who has been forced to bear the cost of the third party's activity; and (2) the employee obtains a full common-law recovery against the third party, who is not subject to the benefits and burdens of the workers' compensation system. While some states have placed the former result first in importance and have decreed that the employer must be reimbursed for all compensation benefits before the employee receives anything from a third-party judgment (see, 2A Larson, Workmen's Compensation Law, § 74.31), Minnesota has given paramount importance to the latter object in mandating that the employee receive a third of the judgment after litigation expenses are paid and before the employer can collect compensation paid. Minn. St. 176.061, subd. 6, provides:

"The proceeds of all actions for damages or settlement thereof under section 176.061, received by the injured employee or his dependents or by the employer as provided by subdivision 5, shall be divided as follows:

"(a)  After deducting the reasonable cost of collection, in-

cluding but not limited to attorneys fees and burial expense in excess of the statutory liability, then

"(b)   One-third of the remainder shall in any event be paid to the injured employee or his dependents, without being subject to any right of subrogation.

"(c)   Out of the balance remaining, the employer shall be reimbursed for all compensation paid under chapter 176.

"(d)   Any balance remaining shall be paid to the employee or his dependents, and shall be a credit to employer for any compensation which employer is obligated to pay, but has not paid, and for any compensation that such employer shall be obligated to make in the future.

"There shall be no reimbursement or credit to employer for interest or penalties."

In summary, the interests of the respective parties in the workers' compensation system are therefore as follows: The employer has a primary interest in limiting his payment for employee injury to the workers' compensation schedule and a secondary interest in receiving reimbursement when a third party has caused him to incur obligations to his employee. See, Nyquist v. Batcher, *supra*. The employee has a primary interest in receiving full workers' compensation benefits and, to the extent a third party has caused him injury, a common-law recovery from that third party.

In contrast, the third party's interest is that of any other cotortfeasor—to limit its liability to no more than its established fault. This interest is vindicated through contribution or indemnity. Contribution and indemnity are variant common-law remedies used to secure restitution and fair apportionment of loss among those whose activities combine to produce injury. As this court stated in Hendrickson v. Minnesota Power & Light Co. 258 Minn. 368, 370, 104 N. W. 2d 843, 846 (1960) :

"The principles governing contribution and indemnity are similar both in origin and in character. In modern law these prin-

ciples comprise the subject that is treated under the general title of restitution. The principles of restitution are derived from the old common-law actions of general assumpsit and those which we now call quasi-contract and from the equitable principles of unjust enrichment. The basis of the right to restitution is the belief that men should restore what comes to them by mistake or at another's expense, and that it is unfair to retain a benefit or advantage which should belong to another. This statement is, however, merely a generalization of the more specific principles underlying the subject. Like most generalizations, this is too vague to be of much assistance in the determination of specific cases. Although both contribution and indemnity rest upon this common concept, they are significantly different in specific application.

"Contribution is the remedy securing the right of one who has discharged more than his fair share of a common liability or burden to recover from another who is also liable the proportionate share which the other should pay or bear. Contribution rests upon principles of equity. Indemnity is the remedy securing the right of a person to recover reimbursement from another for the discharge of a liability which, as between himself and the other, should have been discharged by the other. Indemnity is generally said to rest upon contract, either express or implied. However, there are numerous exceptions and situations in which a contract is implied by law, and contract, therefore, seems to furnish too narrow a basis. In the modern view, principles of equity furnish a more satisfactory basis for indemnity.

"Contribution and indemnity are variant remedies used when required by judicial ideas of fairness to secure restitution. Although similar in nature and origin and having a common basis in equitable principles, they differ in the kind and measure of relief provided. Contribution requires the parties to share the liability or burden, whereas indemnity requires one party to reimburse the other entirely. Differing thus in their effect, these remedies are properly applicable in different situations. Contri-

bution is appropriate where there is a common liability among the parties, whereas indemnity is appropriate where one party has a primary or greater liability or duty which justly requires him to bear the whole of the burden as between the parties."

When one tortfeasor has paid or is about to pay more than his equitable share of damages to an injured party, he has an interest in obtaining indemnity or contribution from his fellow tortfeasors.

Comparative negligence, which is embodied in Minn. St. 604.01 and was substantially borrowed from our sister state of Wisconsin in 1969, introduces yet another dimension to the third-party tortfeasor's predicament. By abolishing the defense of contributory negligence in cases where plaintiff's percentage of total causal negligence is less than defendant's, it permits an injured workman to recover against the third party more frequently. In addition, Minn. St. 604.01, subd. 1, specifies a rule for contribution:

"* * * When there are two or more persons who are jointly liable, contributions to awards shall be in proportion to the percentage of negligence attributable to each, provided, however, that each shall remain jointly and severally liable for the whole award."

Thus, a jointly liable tortfeasor has an interest, at least where the other tortfeasors are solvent and otherwise available for contribution, in contributing no more to the plaintiff's recovery than the percentage of negligence attributable to him.

This court has encountered the problems caused by the conflicting interests of tort and compensation law on several occasions. In Lunderberg v. Bierman, 241 Minn. 349, 63 N. W. 2d 355 (1954), the owner of an automobile entrusted the automobile to a garage and an employee of the garage was injured through the negligent operation of the vehicle by a coemployee. When the injured employee brought an action against the owner of the automobile under the Safety Responsibility Act, we allowed the

owner indemnity against the garage-employer notwithstanding the fact that workers' compensation had also been paid by the employer. We noted that the Workers' Compensation Act did not limit the rights of third parties, at least on the facts presented (241 Minn. 363, 63 N. W. 2d 365):

"At first blush it might seem that there is merit to the argument that to permit the employee to recover of a third person, and then allow such person to recover indemnity of the employer when the employee could not sue the employer, is to extend the liability of the employer beyond that limited by the workmen's compensation act. The answer to this argument is that the workmen's compensation act does not encompass or limit the rights of third parties against the employer nor is there any reason why it should do so. The liability here attaches to Mrs. Bierman only by virtue of the financial responsibility act [Safety Responsibility Act]. She was guilty of no act of negligence causing such liability. She should not be deprived of a right to seek indemnity from one actively responsible for the injury simply because the employee's right to sue the employer is limited by the workmen's compensation act. The words 'or any other person' in our statute must be read in connection with the rest of the act and refer to other persons who have a right to sue for the injuries sustained by the employee. The workmen's compensation act gave to both the employee and the employer some benefits which they did not have under the common law. In return therefor they surrendered some of the advantages which they had under the common law. McGough v. McCarthy Improvement Co. 206 Minn. 1, 287 N. W. 857. That is not true of a third party standing in the position of Mrs. Bierman. She gained nothing by the workmen's compensation act and, consequently, should not be deprived of a right which she would have under the common law."

See, also, Cooper v. Watson, 290 Minn. 362, 187 N. W. 2d 689 (1971).

We subsequently refused, however, to allow contribution to third parties. In Hendrickson v. Minnesota Power & Light Co.

258 Minn. 368, 104 N. W. 2d 843 (1960), this court denied recovery to a third-party tortfeasor seeking contribution or indemnity from a negligent employer. The court held: (1) There was no right of contribution because there was no common liability to the employee, i. e., the employer was not liable in tort to the employee because of the exclusive-remedy provision of our workers' compensation law; (2) there was no right of indemnity because the facts did not fall within one of the exceptional situations in which indemnity is allowed, unlike the facts in Lunderberg.

In the years following Hendrickson, this court also upheld an award of indemnity against an employer who had breached contractual duties to observe safety rules and an express contract of indemnity. In Keefer v. Al Johnson Construction Co. 292 Minn. 91, 100, 193 N. W. 2d 305, 310 (1971), we commented that the negligence of the third party was imputed or vicarious as compared with the active negligence of the employer. But we reaffirmed, in Froysland v. Leef Bros. Inc. 293 Minn. 201, 197 N. W. 2d 656 (1972), the rule of Nyquist v. Batcher, 235 Minn. 491, 51 N. W. 2d 566 (1952), and held that the employer's contributory negligence was not available to the third party as a defense, since the rights of the employee in the third-party action were primary. Froysland did not involve any claim of indemnity.

In Haney v. International Harvester Co. 294 Minn. 375, 201 N. W. 2d 140 (1972), we reviewed prior Minnesota case law and comprehensively analyzed the predicament of the third-party tortfeasor. We concluded that Minn. St. 176.061, subd. 10 (L. 1969, c. 936, § 4), which declared that "the employer shall have no liability to reimburse or hold such third person harmless * * * in absence of a written agreement to do so executed prior to the injury," raised due process problems. The case was remanded for a factual record to develop the constitutional arguments; it was settled on remand. In Carlson v. Smogard, 298 Minn. 362, 215 N. W. 2d 615 (1974), the court struck down § 176.061, subd. 10, as violative of the due process clause of the

Fourteenth Amendment to the United States Constitution and art. 1, § 8, of the Minnesota Constitution. We found that the statute took away a common-law remedy without providing a reasonably just substitute, and that it did not foster any legitimate legislative objective.

The problem of indemnity/contribution in third-party cases was most recently raised in Halvorson v. American Hoist & Derrick Co. 307 Minn. 48, 240 N. W. 2d 303 (1976), but a complete discussion of the issue was avoided by our holding that the third party was not chargeable, as a matter of law, with negligence. The legislature has not provided any substitute for the common-law remedy since Carlson, and the problem is renewed in this case.

Cincinnati initially seeks indemnity from Hutchinson chiefly on the ground that it offered safety devices to Hutchinson which, if installed on the press brake, could have prevented the accident. The difficulty with this argument lies in the jury's unchallenged finding that Cincinnati was 25-percent negligent in the first instance, when it placed its press brake in the stream of commerce without certain kinds of safety devices. Since the independent acts of negligent manufacture and sale by Cincinnati and refusal of safety devices by Hutchinson combined to produce plaintiff's injury, liability should be apportioned between them, not shifted entirely to one or the other. Therefore, if Cincinnati is entitled to any remedy, that remedy is contribution.

Cincinnati's claim for contribution, however, confronts two further problems: (1) Our holding in Hendrickson v. Minnesota Power & Light Co. 258 Minn. 368, 104 N. W. 2d 843 (1960), that contribution is not available because of the absence of a common liability; and (2) the policy interest of the employer in paying no more than his workers' compensation liability because of an employee injury and the other conflicting policies and statutes discussed earlier in this opinion.

Considering the first of these problems, we cannot find any continuing persuasive force in the reasoning of the court in

Hendrickson. That reasoning proceeded, in the words of the court, as follows (258 Minn. 374, 104 N. W. 2d 849):

"It is argued on behalf of defendant Gabrielson that having paid workmen's compensation benefits to dependents of decedent he is exonerated by the Workmen's Compensation Act from liability to any other person arising out of the injury or death of his employee. However, this court has long held that the Workmen's Compensation Act is intended to control only the rights between employer and employee and does not by its terms prevent contribution or indemnity where appropriate. This also seems to be the general rule. Nevertheless, the act does affect the right to contribution where the concurrent negligence of the employer and a third party causes injury to an employee. Since workmen's compensation statutes provide that the obligations thereunder are the only liability of the employer to the employee, or his representatives, there is no common liability involving the employer and third party in such situations; and therefore, there is no ground for allowing contribution."

While there is no common liability to the employee *in tort*, both the employer and the third party are nonetheless liable to the employee for his injuries; the employer through the fixed no-fault workers' compensation system and the third party through the variable recovery available in a common law tort action. Contribution is a flexible, equitable remedy designed to accomplish a fair allocation of loss among parties. Such a remedy should be utilized to achieve fairness on particular facts, unfettered by outworn technical concepts like common liability.

The second problem confronting Cincinnati's claim is a more formidable one. The equitable merit in Cincinnati's claim is plain: It has been forced to bear the entire burden of plaintiff's recovery despite the fact that it was only 25-percent negligent and has a 60-percent-negligent employer joined in the action and available for contribution. In contrast, granting contribution would result in substantial employer participation in its em-

ployee's common-law recovery despite the exclusive-remedy clause. This problem is, in large part, a legislative one which demands a comprehensive solution in statutory form. See, Note, 1 Wm. Mitchell L. Rev. 134, 160. The problem is discussed in Larson, *Workmen's Compensation: Third Party's Action Over Against Employer*, 65 Nw. U. L. Rev. 351, 419:

"The phrase most frequently heard in arguments against recovery over by the third party against the employer is this: the allowance of such recovery over accomplishes indirectly what cannot be done directly and, therefore, evades the spirit of the legislation. This is not entirely accurate, for it does not tell the whole story. True, the end result is that a common-law size recovery proceeds from the employer to the employee. In the process, however, two things are accomplished, one of which is relevant to the purposes of the compensation provision and the other of which is independent of it. The relevant accomplishment is that of preserving the employee's common-law rights against negligent outsiders. This having been done, there still remains the job of adjusting rights fairly between the outsider and the negligent employer. The question here becomes very precise: did the compensation acts, in conferring immunity on the employer from common-law suits, mean to do so only at the expense of the injured employee, or also at the expense of outsiders? One answer is that whereas the injured employee got *quid pro quo* in receiving assured compensation payments as a substitute for tort recoveries, the third party has received absolutely nothing and, hence, should not be impliedly held to have given up rights which he had before. It is unfair, so the argument runs, to pull the third party within the principle of mutual sacrifice when his part is to be all sacrifice and no corresponding gain.

"A situation like this ought to be dealt with legislatively. It is rather inconsiderate to force courts to speculate about legislative intention on the strength of statutory language, in the framing of which the draftsmen had not the remotest trace of the present question in their minds. The legislature should face

squarely the question whether the third party who happens to be so unfortunate as to get tangled up with a compensable injury should, so to speak, individually subsidize the compensation system by bearing alone a burden which normally he could shift to the employer."

While the opinions of other jurisdictions must be read with caution on this issue because of different statutes and concepts of recovery in negligence cases, we have found direction in the approach taken by the Pennsylvania Supreme Court. That court has allowed contribution from the employer up to the amount of the workers' compensation benefits. Maio v. Fahs, 339 Pa. 180, 14 A. 2d 105 (1940); Brown v. Dickey, 397 Pa. 454, 155 A. 2d 836 (1959). See, also, Stark v. Posh Construction Co. 192 Pa. Super. 409, 162 A. 2d 9 (1960). This approach allows the third party to obtain limited contribution, but substantially preserves the employer's interest in not paying more than workers' compensation liability. While this approach may not allow full contribution recovery to the third party in all cases, it is the solution we consider most consistent with fairness and the various statutory schemes before us. If further reform is to be accomplished, it must be effected by legislative changes in workers'-compensation-third-party law.

For the reasons expressed above, the judgment is reversed and the case is remanded with instructions to grant contribution against Hutchinson in an amount proportional to its percentage of negligence, but not to exceed its total workers' compensation liability to plaintiff.

Affirmed in part, reversed in part and remanded with instructions.