Catherine KORDOSKY, et al.,
Respondents,

v.

CONWAY FIRE AND SAFETY, INC.,
defendant and third party
plaintiff, Respondent,

v.

RED OWL STORES, INC., third party
defendant, Appellant.

No. 51446.

Supreme Court of Minnesota.

March 27, 1981.

Jardine, Logan & O'Brien, Graham N. Heikes, and Carol A. Hooten, St. Paul, on appeal only, for appellant.

Abrams & Spector and Mitchell R. Spector, Minneapolis, for Kordosky, et al.

Joyce & McHaffie and Paul A. Joyce, Jr., St. Paul, for Conway Fire & Safety, Inc.

TODD, Justice.

Catherine Kordosky was injured while employed by Red Owl when a fire extin-

guisher fell off a wall and struck her. She received workers' compensation benefits. She and her husband commenced a third-party action against Conway Fire and Safety, Inc., who had furnished the fire extinguisher to Red Owl. Conway brought Red Owl into the litigation as a third-party defendant. The jury awarded damages to the plaintiff, finding Red Owl 60-percent negligent and Conway 40-percent negligent. Red Owl appeals, claiming error because it was found negligent and challenging the allocation of its subrogation proceeds under the Minnesota Workers' Compensation Act. We affirm.

On July 5, 1978, Catherine Kordosky was injured by a fire extinguisher that fell off the wall at the Red Owl Store where she was employed. Kordosky was putting open cartons of cigarettes in a revolving single-pack display rack. This activity eventually required her to take up a position on her haunches close to the floor. When Kordosky finished filling the rack, she began to rise up from the floor, but felt something brush against her shoulder and went back down. At this point a fire extinguisher fell on her shoulders and neck, knocking her unconscious. When Kordosky regained consciousness, she saw the fire extinguisher, its mounting bracket, and some screws lying on the floor. The accident caused Kordosky serious injury, preventing her from working at least until the time of trial.

The fire extinguisher that fell on Mrs. Kordosky was sold to Red Owl by respondent Conway Fire and Safety, Inc., on March 6, 1978. Red Owl was in the process of expanding the size of the Hastings store and needed additional fire extinguishers.

There is a dispute as to whether the extinguisher was installed by Conway. Conway's employee Anderson testified at trial that he delivered the extinguishers to Red Owl, but did not install them all because the construction was not yet complete. He did install some of the fire extinguishers, but left the rest with the foreman of the carpenter crew for installation later. The invoice sent by Conway to Red Owl, however, showed a charge for the sale and installation of six fire extinguishers.

At trial, the assistant manager of the Red Owl store testified that he was not aware that the fire extinguishers were ever inspected by Red Owl. He acknowledged that the extinguisher that injured Kordosky was mounted right outside the door to his office and that he walked by it as he entered and left his office.

The two experts called at trial, both engineers, testified that the installation of the fire extinguishers was improperly made. The fire extinguisher weighed approximately 17 pounds fully charged. The surface on which the extinguisher was mounted was ⅝–inch gypsum board or sheet rock. About 1½ inches beyond the gypsum board there was a solid concrete wall. The bracket on which the extinguisher was mounted is "T"-shaped, requiring two screws at the top and one at the bottom. While neither expert would say exactly what device was used to mount the bracket, it seems fair to infer that three wood screws were used. One expert testified that this mounting was insufficient because not enough friction was created to support the weight of the extinguisher. Both experts testified that either toggle bolts or a plastic sleeve would have been the appropriate way to mount the extinguisher.

At the close of the evidence, appellant Red Owl moved for a directed verdict in its favor on the ground that there was no evidence from which the jury could conclude that it had been negligent. The trial court denied the motion based on its belief that the jury could find that Red Owl, as the owner of the store, had breached its duty to keep its premises in a reasonably safe condition.

The jury returned a special verdict awarding plaintiff Catherine Kordosky $60,000 in damages and her husband, Dennis Kordosky, $10,000 in damages. Red Owl was found 60-percent negligent and Conway was found 40-percent negligent. In its conclusions of law, the trial court ordered that plaintiffs recover $70,000 from Conway Fire and Safety. Red Owl was ordered to pay 60 percent of the verdict or an amount equal to the compensation paid and payable to Kordosky to Conway. The court then

ordered that the judgment recovered by plaintiff be disposed of as follows:

(1) There should first be deducted the plaintiffs' attorneys fees and costs of collection;

(2) Of the figure then remaining there should be paid to the plaintiffs one-third (⅓) thereof outright;

(3) Subject to the payment of the foregoing, there should be paid to the defendant, Red Owl Stores, Inc., a sum equal to the compensation paid by Red Owl Stores, Inc. to the plaintiffs to date, reduced, however, by the percentage figure which the amount determined under item "1.c(1)" above bears to the figure set forth under item "1.a." above.

The amount remaining was paid to plaintiffs and was a credit to Red Owl against future workers' compensation benefits. This credit was to be reduced by a percentage amount of attorneys fees. At the time of trial, Red Owl had paid $21,947.69 to Kordosky in workers' compensation benefits.

Red Owl moved for amended findings of fact and conclusions of law. This motion was denied by the trial court and Red Owl appeals from the order denying its motion.

The issues presented are:

1. Whether the evidence justifies a verdict of negligence as to Red Owl.

2. Whether the trial court properly allocated the verdict under the applicable Minnesota statute.

1. Red Owl argues that this court should reverse the jury's verdict for two reasons. First, it argues that since the jury found Conway 40-percent negligent, the jury must have concluded that Conway installed the fire extinguisher. Therefore, it argues the jury must have concluded that Red Owl was negligent in failing to discover that the fire extinguisher was improperly installed. This, it argues, means that Red Owl was only passively negligent and should not be more culpable than Conway, which was found 40-percent negligent.

The second part of Red Owl's argument is that the trial court committed prejudicial error when it allowed a number of references to the National Fire Protection Association Rules. This was error, it claims, because these rules do not cover the harm that resulted in plaintiff's injury.

Respondent Kordosky argues that Red Owl's admission that it failed to inspect the fire extinguisher installation was sufficient to support the jury's verdict.

Respondent Conway Fire and Safety, Inc., argues that the evidence was sufficient to support the jury's conclusion that Red Owl failed to maintain the fire extinguisher installation. This argument is based on the fact that Kordosky only brushed the extinguisher and this was sufficient to cause it to fall on her. Conway argues that the jury must have concluded the extinguisher was hanging by a thread and that Red Owl should have discovered this situation.

The trial court instructed the jury that:

Now we will get to some rules of laws in some different respects here. First is the definition of an entrant. An entrant is a person who enters or remains upon the premises of another and is not a trespasser. The plaintiff, Catherine Kordosky, was an entrant within the meaning of this definition. And now with respect to the duty of the possessor of land to an entrant, a possessor of land has a duty to use reasonable care to inspect and repair his premises or to protect the entrant from an unreasonable risk of harm caused by the condition of the premises while he is on the premises.

In determining reasonable care of the land owner the following facts may be considered: the purposes for which the entrant entered the premises, the circumstances under which the entrant entered the premises, the use to which the premises is put or expected to be put, the foreseeability or possibility of harm, the reasonableness of the inspection, repair or warning, and the opportunity and ease of repair or correction. One who undertakes gratuitously or for consideration to render services to another which he should recognize as necessary for the protection of a third person or his things is

subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking if (a), his failure to exercise reasonable care increases the risk of such harm or (b), he has undertaken to perform a duty owed by the other to the third person or (c), the harm is suffered because of reliance of the other or the third person upon the undertaking.

■ This instruction was given without objection by Red Owl. This instruction, coupled with the testimony of the assistant manager at the Red Owl store that no inspections were made, was a sufficient basis for the jury's determination that Red Owl was 60-percent negligent.

■ The second part of Red Owl's argument, that it was prejudicial error for the trial court to allow the mention of the National Fire Protection Association Rules, is without merit. The first time the rules were mentioned there was no objection. At the second mention, involving the incorporation of the rules by OSHA, Red Owl moved to strike the reference on the ground that OSHA did not set a standard of care for negligence actions. This motion was made the day after the reference. After a lengthy discussion about the applicability of the rules, the court stated with reference to Conway's attorney's attempt to introduce the rules:

He intends to admit those if he is able to lay proper foundation. I think you have indicated that we would get to that on a foundation basis.

Red Owl's attorney responded "That will be fine." The later references to the rules were in an attempt to lay foundation for the rules. There was no objection raised by Red Owl's attorney. In fact, Red Owl's attorney asked one of the experts questions about the rules. The rules were never admitted into evidence, nor was the jury instructed that the rules formed the basis for a standard of care applicable to Red Owl.

Because Red Owl's attorney agreed that the rules could be admitted if proper foundation was laid, any objection Red Owl might have had regarding the rules was waived.

2. In *Lambertson v. Cincinnati Corp.,* 312 Minn. 114, 257 N.W.2d 679 (1977), this court held that a third party sued by an employee was entitled to contribution from a negligent employer. The amount of contribution was limited to the lesser of either the percentage of the judgment owed or the employer's workers' compensation liability. *Id.* at 130, 257 N.W.2d at 689. The holding in *Lambertson* was based on the equitable nature of the contribution remedy and was designed to achieve fairness among the parties. *See* Steenson, *The Anatomy of Products Liability in Minnesota: Principles of Loss Allocation,* 6 Wm. Mitchell L.Rev. 243, 287–88 (1980). The *Lambertson* decision left open the exact method of allocation. *See id.* at 289.

In *Johnson v. Raske Building Systems, Inc.,* 276 N.W.2d 79 (Minn.1979), the question of the proper method of allocation was presented. The court in *Johnson* held that:

[W]hen an employer has paid workers' compensation benefits and the employee recovers a judgment against a third-party tortfeasor, the employer is entitled to reimbursement of the benefits paid pursuant to § 176.061, subd. 6(c), even though the employer is found negligent.

*Id.* at 81 (footnote omitted). The procedure of payment was to be as follows:

The correct procedure for apportionment, then, is this: The third-party tortfeasors, here Raske and Ferguson, should pay the entire verdict ($99,750) to the plaintiff. The employer should then contribute to the third-party tortfeasor an amount proportionate to its percentage of negligence, but not to exceed the amount of workers' compensation benefits payable to the employee ($41,000). The employee (here the plaintiff trustee) should then reimburse the employer pursuant to § 176.061, subd. 6(c). In the present case this amount of reimbursement equals the amount of workers' compensation benefits paid ($41,000), with the result that no money will change hands.

*Id.*

In 1976, the legislature amended Minn. Stat. 176.061, subd. 6(c), to allow a reduc-

tion in the amount of reimbursement the employee was to pay to the employer. This reduction was designed to reimburse the employee for a percentage of the amount of attorneys fees expended in the action against the third party. As explained by the court in *Cronen v. Wegdahl Cooperative Elevator Association,* 278 N.W.2d 102 (Minn.1979), "[t]he purpose of this provision is to ensure that those benefited by the recovery share equitably in the cost of obtaining that recovery." *Id.* at 104. The 1976 amendment reads as follows:

> (c) Out of the balance remaining, the employer shall be reimbursed ~~for~~ *in an amount equal to* all compensation paid under chapter 176 *to the employee or his dependents by the employer less the product of the costs deducted under clause (a) divided by the total proceeds received by the employee or his dependents from the other party multiplied by all compensation paid by the employer to the employee or his dependents.*

Act of Apr. 3, 1976, ch. 154, § 2, 1976 Minn.Laws 449, 450.

The injury in the *Johnson* case occurred prior to the effective date of the 1976 amendment. The court in *Johnson* did, however, mention the amendment:

> *In future cases the amount of reimbursement will not equal the benefits actually paid because of the 1976 amendment to § 176.061, subd. 6(c).* [Emphasis added.]

276 N.W.2d at 81 n.5. Since the accident in this case occurred after 1976, the amendment is applicable here.

■ The impact of the 1976 amendment on the *Johnson* formula can be illustrated by the facts of this case:

1. The inclusion of the husband's $10,000 recovery in the statutory distribution formula may be inconsistent with our opinion in *Rascop v.*

Pre-1976 Amendment

| | |
|---|---:|
| Total Recovery | $70,000.00[1] |
| Less ⅓ attorney's fee | 23,333.33 |
| | 46,666.67 |
| Less ⅓ to plaintiff | 15,555.55 |
| | 31,111.12 |
| Less reimbursement of 21,947.69 in workers' compensation benefits paid by Red Owl | 21,947.69 |
| Balance to plaintiff | 9,163.43 |

Post-1976 Amendment

| | |
|---|---:|
| Total Recovery | 70,000.00 |
| Less ⅓ attorney's fee | 23,333.33 |
| | 46,666.67 |
| Less ⅓ to plaintiff | 15,555.55 |
| | 31,111.12 |

Less reimbursement of 21,947.69 in workers' compensation benefits paid by Red Owl reduced by a proportionate attorney's fee

Formula by statute:

$$\frac{\text{Fees}}{\text{Total Recovery}} \times \text{Benefits paid} =$$

$$\frac{23,333.33}{70,000.00} \times 21,947.69 =$$

$$.3331 \times 21,947.69 =$$

7,315.89

| Benefits minus proportionate fee | |
|---|---:|
| 21,947.69 − 7,315.89 | 14,631.80 |
| | 16,479.32 |
| Balance to plaintiff | 16,479.32 |

Thus, it is apparent that the 1976 amendment operates to increase the amount of the proceeds the plaintiff is entitled to keep. Since the *Johnson* formula requires the employer to pay the full amount of workers' compensation benefits to the third party as a form of limited contribution, the employer loses money in the exchange. In this case, that loss amounts to the difference between the contribution payment from Red Owl to Conway, $21,947.69, and the reimbursement Red Owl receives from Kordosky, $14,631.80, or $7,315.89.

*National Carriers,* 281 N.W.2d 170 (Minn.1979). However, respondent has not raised the issue, and we need not address it.

As this court noted in *Cronen,* the 1976 amendment is designed to require the employer to pay its fair share of the attorney's fee that generated the recovery from the third party. *See Cronen v. Wegdahl Cooperative Elevator Association,* 278 N.W.2d at 104. Moreover, even if this court desired to change this aspect of the distribution formula, it could not since the reduction of a proportionate attorney's fee is mandated by the 1976 amendment.

Therefore, if the *Johnson* formula is to be changed, that change must be made in the amount of contribution that is paid by the employer to the third party as contribution. The appellant proposes a complex system which would result in limiting the employer's liability to workers' compensation benefits paid. The implementation of this system would require extensive amendments to Minn.Stat. § 176.061, subd. 6 (1980), and is therefore beyond the power of this court. Professor Steenson proposes a simple solution: change the *Johnson* formula so that the employer is required to pay to the third party as contribution only that amount of compensation for which it will be reimbursed by the employee. *See* Steenson, *supra* at 306. According to Professor Steenson, this approach is consistent with *Lambertson* in that it limits the liability of the employer to that imposed upon it by the workers' compensation laws. *See id.*

Professor Steenson's approach is no doubt a practical alternative. It is not, however, completely consistent with *Lambertson.* In *Lambertson,* this court attempted to balance the interests of the employee, employer, and third party. As the court noted, "the third party's interest is that of any other cotortfeasor—to limit its liability to no more than its established fault." *Lambertson v. Cincinnati Corp.,* 312 Minn. at 122, 257 N.W.2d at 685. In order to vindicate this interest, the court allowed the third party to obtain contribution from the employer up to the amount of the employer's workers' compensation liability. *See id.* at 130, 257 N.W.2d at 689. If the court adopted Professor Steenson's solution, the contribution that the third party is able to obtain from the employer, already severely limited in many cases, will be further reduced. Moreover, since the reduction mandated by the 1976 amendment reflects attorneys fees expended by the employee to obtain the recovery from the third party, to pass this reduction on to the third party would be to require the third party to pay for the privilege of being sued. This is not consistent with the equitable principles that form the basis of the *Lambertson* holding.

The results in this case do not fully achieve the equitable goals that form the underpinning of *Lambertson.* However, as we noted in *Johnson,* the result will not be perfect in every case. The 1976 legislation has altered the application of *Lambertson.* Any further corrections in the allocation formula are properly a function of the legislature.

Affirmed.

SCOTT, J., took no part in the consideration or decision of this case.