Steven WIRTH, et al., Plaintiffs,

v.

M.A. MORTENSON/SHAL ASSOCIATES, a joint venture, Appellant,

and

The American Mutual Insurance Company (in liquidation), et al., Intervenors, Respondents.

No. C6–94–496.

Court of Appeals of Minnesota.

Aug. 2, 1994.

Review Denied Sept. 28, 1994.

Duane E. Arndt, Arndt & Benton, P.A., Minneapolis, for appellant.

Andrew J. Morrison, Lisa A. Dittmann, Koll, Morrison, Charpentier & Crawford, St. Paul, for respondents.

Considered and decided by AMUNDSON, P.J., and HUSPENI and KALITOWSKI, JJ.

## OPINION

KALITOWSKI, Judge.

Pursuant to a joint petition for discretionary review, appellant M.A. Mortenson/Shal Associates (Mortenson) seeks review of the district court's denial of its motion for summary judgment. Mortenson contends respondent Wisconsin Insurance Security Fund (WISF), an intervenor in this action, has no right to pursue a subrogation claim against Mortenson pursuant to Minnesota's Workers' Compensation Act. Mortenson also contends that allowing WISF to pursue its subrogation claim, while prohibiting Mortenson from pursuing certain contribution or indemnity claims against other parties, violates the equitable principles enunciated in *Lambertson v. Cincinnati Corp.*, 312 Minn. 114, 257 N.W.2d 679 (1977), and the due process clauses of the state and federal constitutions.

## FACTS

Steven Wirth, a Wisconsin resident, was an employee of respondent L.H. Sowles Construction Company (Sowles), a Minnesota company. On March 21, 1987, Wirth fell while working on the Norwest Tower construction site in Minneapolis and sustained serious injuries. Mortenson was the general contractor on the Norwest Tower and Sowles was a subcontractor.

At the time of the accident, Sowles was insured by respondent American Mutual Insurance Company (American Mutual). Wirth sought and recovered damages from American Mutual pursuant to Minnesota's Workers' Compensation Act. American Mutual subsequently became insolvent. Because Wirth was a Wisconsin resident, WISF assumed American Mutual's obligation to pay Wirth his workers' compensation benefits, as required by Wisconsin law. *See* Wis.Stat. Ch. 646 (1987–88).

In March 1989, Wirth commenced this negligence action against Mortenson and another defendant, who was later dismissed. In July 1991, Mortenson and the other defendant initiated a third-party contribution or indemnity action against Sowles. Because Sowles was a Minnesota employer with an insolvent insurer, the Minnesota Insurance Guaranty Association (MIGA) provided Sowles' defense, as required by the Minnesota Insurance Guaranty Association Act (the MIGA Act). *See* Minn.Stat. Ch. 60C (1990). The district court granted summary judgment in favor of MIGA, concluding that Mor-

tenson's third-party action was barred by the MIGA Act.

American Mutual and WISF intervened in this action pursuant to Minn.R.Civ.P. 24.03. American Mutual and WISF alleged that they had subrogation rights under the Workers' Compensation Act and were thus entitled to contribution or indemnity for all workers' compensation benefits paid and payable to Wirth as a result of the accident. Mortenson moved for summary judgment, alleging that WISF has no subrogation rights. The district court denied Mortenson's motion, concluding that Minn.Stat. § 176.061, subd. 5 (1992) unambiguously permits WISF's subrogation claim against Mortenson. This court granted their joint petition for discretionary review.

## ISSUES

1. Did the district court err in concluding that WISF has a right to pursue its subrogation claim under Minnesota's Workers' Compensation Act?

2. Did the district court err in concluding that allowing WISF to pursue its subrogation claim, while prohibiting Mortenson from pursuing its contribution or indemnity claims, does not violate the equitable principles enunciated in *Lambertson?*

3. Did the district court err in concluding that allowing WISF to pursue its subrogation claim, while prohibiting Mortenson from pursuing its contribution or indemnity claims, does not violate the due process clauses of the state and federal constitutions?

## ANALYSIS

 On appeal from summary judgment, we must determine: (1) whether there are any genuine issues of material fact; and (2) whether the district court erred in its application of the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). Where, as here, the material facts are not in dispute, we need not defer to the district court's application of the law. *Hubred v. Control Data Corp.,* 442 N.W.2d 308, 310 (Minn.1989).

I.

 Mortenson contends that WISF has no right to pursue its subrogation claim under Minnesota's Workers' Compensation Act. We disagree.

Whether insurance guaranty associations such as WISF have subrogation rights under the Workers' Compensation Act is an issue of first impression. In actions against a party other than the employer, the Workers' Compensation Act provides:

> If the injured employee or the employee's dependents or any party on their behalf receives benefits from the employer or the special compensation fund or institutes proceedings to recover benefits or accepts from the employer or the special compensation fund any payment on account of the benefits, the employer or the special compensation fund is subrogated to the rights of the employee or the employee's dependents or has a right of indemnity against a third party.

Minn.Stat. § 176.061, subd. 5(a). The supreme court has emphasized that

> [t]he right of subrogation to an injured employee's third-party action appears strictly dependent upon statutory authorization rather than upon common-law principles. * * * Where such legislation fails to authorize subrogation by specific designation, or limits its extent, or specifies the kind of action in which it is authorized, the courts will not enlarge upon or extend the specific language or provisions thereof.

*Orth v. Shiely Petter Crushed Stone Co.,* 253 Minn. 142, 146–47, 91 N.W.2d 463, 467 (1958).

Under the MIGA Act, insurance guaranty associations have statutory authority to pursue subrogation claims:

> The rights under the policy of a person recovering under Laws 1971, chapter 145 shall be deemed to have been assigned by the person to the association to the extent of the recovery.

Minn.Stat. § 60C.11, subd. 1 (1990). Moreover, the MIGA Act recognizes the rights of insurance guaranty associations of other states:

> [I]f it is a workers' compensation claim, [any person having a claim which may be

recovered under more than one insurance guaranty association or its equivalent] shall seek recovery first from the association of the residence of the claimant.

Minn.Stat. § 60C.13, subd. 2 (1990). Wisconsin's statutes provide similar subrogation rights to WISF. *See* Wis.Stat. § 646.33(1) (1987–88) (subrogating WISF to the full right of recovery upon payment to any loss claimant); Wis.Stat. § 646.31(2)(d)1, (9)(c) (1987–88) (requiring WISF to pay claims of injured state residents).

Mortenson argues that subrogation rights must be defined by the Workers' Compensation Act, and not other statutory provisions. We disagree. First, although Minn.Stat. § 176.061 does not expressly provide such subrogation rights, the supreme court has extended subrogation rights to the employer's workers' compensation insurer. *See Wandersee v. Brellenthin Chevrolet Co.,* 258 Minn. 19, 24, 102 N.W.2d 514, 517 (1960) (extending subrogation rights to an employer's insurer as a matter of contract law). Thus, the court in *Wandersee* indicates that Minn.Stat. § 176.061 is not the exclusive source of subrogation rights under the Workers' Compensation Act.

Second, the MIGA Act expressly grants subrogation rights to insurance guaranty associations, while the Workers' Compensation Act does not address the subrogation rights of insurance guaranty associations. Thus, even if we conclude the statutes conflict, the MIGA Act is controlling because it specifically addresses the subrogation rights of insurance guaranty associations. *See* Minn.Stat. § 645.26, subd. 1 (1992) (if two conflicting statutory provisions are irreconcilable, the special provision shall be construed as an exception to the general provision).

## II.

■ Mortenson contends that allowing .WISF to pursue its subrogation claim, while prohibiting Mortenson from pursuing its contribution or indemnity claims, violates the equitable principles enunciated in *Lambertson.* We disagree.

In *Lambertson,* the supreme court held that a third-party tortfeasor could seek contribution from an employer up to the amount of the workers' compensation benefits. *Lambertson,* 312 Minn. at 130, 257 N.W.2d at 689. In so holding, the court reasoned that contribution provides the third-party tortfeasor with an equitable remedy that would accomplish a fair allocation of loss among the parties. *Id.* at 128, 257 N.W.2d at 688.

Mortenson argues that *Lambertson* established an equilibrium between the parties and that allowing WISF to pursue its subrogation claim while prohibiting Mortenson from pursuing its contribution or indemnity claims upsets this equilibrium. We disagree.

First, *Lambertson* itself does not establish an absolute right to contribution for third-party tortfeasors. To the contrary, *Lambertson* recognized some limits:

> Thus, a jointly liable tortfeasor has an interest, *at least where the other tortfeasors are solvent and otherwise available for contribution,* in contributing no more to the plaintiff's recovery than the percentage of negligence attributable to him.

*Id.* at 124, 257 N.W.2d at 686 (emphasis added). Here, although Sowles is solvent, its insurer, American Mutual, is insolvent. The court in *Lambertson* suggested that the right to contribution may not exist in these circumstances.

Second, this court has recognized that rights of indemnity and contribution are not vested rights and thus can be "impaired by subsequent legislation." *Reinsurance Ass'n v. Dunbar Kapple, Inc.,* 443 N.W.2d 242, 248 (Minn.App.1989). The MIGA Act prohibits subrogation claims against insurance guaranty associations, and grants subrogation rights to insurance guaranty associations. *See* Minn.Stat. §§ 60C.09, subd. 2, 60C.11, subd. 1. We conclude that the equitable principles enunciated in *Lambertson* cannot prevail over these statutory provisions.

## III.

■ Mortenson contends that allowing WISF to pursue its subrogation claim, while prohibiting Mortenson from pursuing its contribution or indemnity claims, violates the due process clauses of the state and federal constitutions. We disagree.

The legislature may constitutionally abolish a common law right without providing a reasonable substitute if "it is pursuing a permissible, legitimate legislative objective." *Sartori v. Harnischfeger Corp.,* 432 N.W.2d 448, 453 (Minn.1988); *see also Schweich v. Ziegler, Inc.,* 463 N.W.2d 722, 733 (Minn. 1990) (recognizing that remedies are not vested rights and parties thus do not have a vested right to particular remedies).

We conclude that allowing WISF to pursue its subrogation claim while prohibiting Mortenson from pursuing its contribution or indemnity claims serves permissible and legitimate legislative objectives and is therefore constitutional. One of the purposes of the MIGA Act is to "allocate the costs of protecting policyholders and claimants among the insurers licensed to do business in the state." *Dunbar Kapple,* 443 N.W.2d at 247. As this court has noted:

> It would seem illogical to require insurers to contribute to a fund designed to protect policyholders and claimants, then allow various insurers to draw upon the fund or to directly sue the policyholders and claimants whom the fund is designed to benefit.

*Id.* Similarly, allowing WISF to pursue its subrogation claim serves the legitimate legislative objective of requiring third-party tortfeasors to bear the liability, rather than allocating the liability among all insurers. Without deciding the merits of Mortenson's contribution or indemnity claims, we conclude that the legislature has legitimate objectives in protecting the rights of insurance guaranty associations such as WISF.

Moreover, the MIGA Act only limits Mortenson's rights under limited circumstances:

> The statute only applies in limited situations where the alleged tortfeasor's insurer is insolvent. Furthermore, it only prevents the subrogee insurer from suing within the policy limits of the policy issued by the insolvent insurer. The subrogee insurer may still sue the insured for liability in excess of the policy amount or outside the scope of coverage.

*Id.* at 247–48. Under these circumstances, we conclude that the district court's orders did not violate Mortenson's due process rights.

**DECISION**

The district court properly determined that WISF has the right to pursue a subrogation claim under the Workers' Compensation Act. The district court also properly determined that allowing such a claim, while prohibiting Mortenson from pursuing its contribution or indemnity claims, does not violate the equitable principles enunciated in *Lambertson* or the due process clauses of the state and federal constitutions.

**Affirmed.**