Neoma PETERSON, as Trustee for the Heirs of Rodney R. Peterson, Respondent,

v.

LITTLE–GIANT GLENCOE PORTABLE ELEVATOR DIVISION OF DYNAMICS CORPORATION OF AMERICA, Respondent,

Easterlund Implement, Inc., Appellant.

Prince Manufacturing Corporation, Respondent.

No. C6–83–1376.

Court of Appeals of Minnesota.

May 8, 1984.

Donald M. Jardine, John C. Dunlap, St. Paul, for appellant.

Gerald L. Maschka, Mankato, for Neoma Peterson.

Robert T. Stich, Minneapolis, for Little-Giant Glencoe Portable Corp. of America.

Douglas R. Archibald, Minneapolis, for Prince Mfg. Corp.

Heard, considered and decided by WOZ-NIAK and HUSPENI, NIERENGARTEN, JJ.

## OPINION

NIERENGARTEN, Judge.

This is an appeal from an order of the trial court denying defendant Easterlund Implement, Inc.'s motion for a new trial and judgment notwithstanding verdict in a products liability action. Easterlund contends the Court erred in failing to adequately disclose midtrial settlement agreements to the jury, in requiring contribution from Easterlund who had no common liability with other defendants, in allowing a jury finding of negligence but no strict liability of defendant manufacturer Little-Giant Glencoe, in failing to direct a verdict

against defendant Little-Giant Glencoe and Prince Manufacturing, and in allowing the verdict against Easterlund to stand on insufficient evidence. We affirm.

## FACTS

Rodney Peterson was killed on April 8, 1981 when a hydraulic wing on farm equipment, a soil finisher, fell on him. This products liability action was then commenced against the manufacturer of the soil finisher, respondent Glencoe, and the dealership that owned the soil finisher, appellant Easterlund. Defendant Prince, the manufacturer of the hydraulic cylinder on the soil finisher, was subsequently impleaded. During the trial, settlements were reached whereby Prince paid Glencoe $225,-000.00 to take over the defense of and indemnify Prince from all losses. Plaintiff Peterson's damages were stipulated at $750,000.00. The apportionment of liability on this amount was to be based on the jury's allocation of fault among Easterlund, Glencoe and Prince.

The jury found Glencoe 65% at fault, Easterlund 35% at fault and attributed no fault to Prince.

## I

DID THE COURT ABUSE ITS DISCRETION IN FAILING TO COMPLETELY INFORM THE JURY OF THE MIDTRIAL SETTLEMENTS?

Immediately following settlement, the trial court advised the jury:

An agreement has been reached which will no longer require the attorneys for Prince Manufacturing Corporation to be present; however, you are advised that you are to continue to evaluate the evidence as to Prince and as to all other parties. Further instructions will be given to you upon conclusion of this trial on these particular matters.

Prior to settlement, Glencoe pursued both Easterlund and Prince. Following settlement, Glencoe's pursuit of Prince ceased and any further evidence of Prince's liability (based upon defective cylinders) was developed by Peterson and Easterlund. In closing arguments, Glencoe focused only on Easterlund's liability and Easterlund focused on both Prince and Glencoe.

The Court refused Easterlund's chamber request for a more elaborate explanation of the settlements, explaining;

Easterlund's motion for the suggested instruction is denied on the basis that to provide a fair and balanced presentation to the jury as to what actually occurred would entail and require the Court to give several other instructions which, in the Court's view, would cause confusion in the minds of the jury, possibly prejudice, and would outweigh any advantage that might be served by advising them of the position of Prince.

The Court then instructed the jury as follows:

As mentioned to you yesterday the parties did reach an agreement in this case and they reached an agreement among other things as to damages. Therefore you need not determine that matter but you will have to determine what proportion of negligence, if any, should be assigned to each of the three defendants; Easterlund Implement, Inc., Glencoe Portable Elevator, and Prince Manufacturing. Essentially that will be your job, to make those determinations.

 Midtrial settlements should be disclosed to the jury to the extent that a fair verdict may be reached, including information explaining the absence of a settling tortfeasor, but the extent of such disclosure is within the Court's discretion. *Frey v. Snelgrove*, 269 N.W.2d 918 (Minn. 1978). Absent clear abuse, a reviewing Court does not interfere with the exercise of discretion. *O'Brien v. Kemper*, 276 Minn. 202, 149 N.W.2d 487 (1967).

Easterlund claims that the sudden absence of adversity between Glencoe and Prince and the sudden disappearance of Prince's counsel from the lawsuit, following settlement, led to such jury confusion and misunderstanding that Prince was cleared of all wrongdoings. While it is true there was a certain amount of vague-

ness and ambiguity in the court's final instructions, the jury was explicitly advised on two separate occasions to consider the liability of Prince. It is reasonable to infer that the jury weighed the evidence against Prince and found it to be insufficient to sustain a finding of fault.

■ Both before and after settlement, Peterson and Easterlund remained adversaries of Prince and there is no evidence of any failure on their part to develop their theories of Prince's liability, regardless of Glencoe's silence after settlement. The record reveals no clear abuse in the Court's failure to disclose the agreement between Glencoe and Prince in the detail requested by Easterlund.

## II

WAS GLENCOE ENTITLED TO CONTRIBUTION FROM EASTERLUND WHO WAS ENGAGED IN A COMMON ENTERPRISE WITH PETERSON AT THE TIME OF THE ACCIDENT?

The trial court dismissed plaintiff Peterson's claims against Easterlund because decedent Peterson and Easterlund's employees were engaged in a common enterprise at the time of the accident and decedent's heirs elected to receive Worker's Compensation benefits under Minn.Stat. § 176.061 (1982). The Court allowed Glencoe, however, to continue its action for contribution against Easterlund with the result that Easterlund was included in the jury's apportionment of fault among the defendants. Easterlund claims there was no common liability between it and other defendants, ergo, there could be no contribution. Glencoe maintains, however, that *Lambertson v. Cincinnati Corp.*, 312 Minn. 114, 257 N.W.2d 679 (1977) controls.

*Lambertson* held that a third party tortfeasor partially liable for injuries sustained by an injured employee may maintain an action for contribution against an employer even though the employee is barred from directly proceeding against the employer under § 176.061. The Supreme Court opined that:

Contribution is a flexible, equitable remedy designed to accomplish a fair allocation of loss among parties. Such a remedy should be utilized to achieve fairness on particular facts, unfettered by outworn technical concepts like common liability.

312 Minn. at 128, 257 N.W.2d at 688. In *Lambertson*, the employer was required to pay out benefits to the injured employee, thus sharing an uncommon liability with the third party to claimant employee. That uncommon liability created an obligation to contribute with the third-party tortfeasor toward payment of the employee's damages to the extent of the employer's workers compensation liability. In the instant case, Peterson was not entitled to benefits from Easterlund because of the common enterprise in which they were engaged. Easterlund contends, therefore, that vis-a-vis Lambertson, because it did not have to pay any benefits to Peterson, there was no common liability. It cites *Hart v. Cessna Aircraft Co.*, 276 N.W.2d 166 (Minn.1979) as support for its claim that common liability is still essential for contribution.

Plaintiff, in *Hart*, a wrongful death action, failed to show negligence on the part of an airplane pilot. She then sued the aircraft manufacturer who impleaded the pilot for contribution. The Supreme Court affirmed the trial court's dismissal of the third-party complaint, reasoning that "only a tortfeasor who is liable for a plaintiff's loss should be required to contribute to the payment for that loss." *Id.* at 168. However, the Court did state the basis for that conclusion was the fact the pilot was found not negligent in the first action and implied a different result had the pilot been found negligent. In its effort to work equity even under the facts of *Hart*, the Court did grant some relief to the manufacturer by limiting its liability to that portion of damages attributable only to its own negligence, *Id.* at 169.

Easterlund also looks to *Horton v. Orbeth*, 342 N.W.2d 112 (Minn.1984) for support. *Horton* denied a party found 74% at fault in causing an accident to recover con-

tribution from two other tortfeasors whose negligence had been found to be 8% each compared to the claimant's comparative negligence of 10%. By virtue of application of Minnesota's Comparative Negligence Statute, Minn.Stat. § 604.01 (1982), no common liability existed between the 8% tortfeasors and the 74% tortfeasor. The Supreme Court, in *Horton*, cautions us that *Lambertson* does not stand as authority for the proposition that common liability is no longer relevant to the availability of contribution. It characterizes common liability as a flexible concept which will not be defeated by certain technical defenses such as a tortfeasor's personal immunity. 342 N.W.2d at 114, 115. This is consistent with the trend to limit defenses in tort actions, and in so doing, broaden the field in which contribution is available.

In pursuing the fairness approach, the Supreme Court seems to examine the quality of the tortfeasor's conduct.

We have consistently refused to require a party to contribute to an award when the quality of his conduct did not justify imposing liability to the injured party.

*Horton*, 342 N.W.2d at 114 (Minn.1984). Faced with a claimant's degree of fault exceeding that of third-party defendants, the *Horton* Court disallowed contribution. In *Lambertson*, where claimant's degree of fault was less than that of third-party defendant, contribution was allowed.

■ In applying those same principles of equity here, where Easterlund's negligence exceeded that of claimant, the technical defense of worker's compensation immunity is not sufficient to preclude contribution. The quality of conduct by the employer in *Lambertson* and by Easterlund appears to be similar. In each instance, their negligence exceeded that of the claimants.

The jury's apportionment of negligence to Easterlund could have been for no other purpose than ascertaining contribution. As succinctly stated by our Supreme Court:

The special verdict apportioning (the employers) ... negligence could have been for no other purpose than ascertaining contribution, since (the plaintiff) was pre-

cluded from recovery from (the employer) regardless of (the employer's) degree of negligence.

*Hudson v. Snyder Body, Inc.*, 326 N.W.2d 149, 157 (Minn.1982).

Glencoe is entitled to contribution from Easterlund.

## III

IS A SPECIAL VERDICT OF NEGLIGENCE BUT NO STRICT LIABILITY AGAINST GLENCOE INCONSISTENT AND IRRECONCILABLE?

The jury found Glencoe negligent without strict liability. Easterlund claims this is an inconsistent and irreconcilable verdict, relying upon *Halvorson v. American Hoist and Derrick Co.*, 307 Minn. 48, 240 N.W.2d 303 (1976), (overruled on other grounds, *Holm v. Sponco Manufacturing*, 324 N.W.2d 207 (Minn.1982)). In *Halvorson*, the jury found the defendant negligent but not strictly liable for manufacturing a dangerous product. That verdict was set aside as being irreconcilable. However, *Halvorson* is distinguishable. The two theories of recovery relied upon were dependent upon a single course of conduct, i.e., the failure to provide safety devices on the product in question.

■ In this case, Glencoe's liability could have been predicated on more than one course of conduct. There was testimony that its soil finisher was inherently dangerous because of wing design and a defective hydraulic cylinder, both strict liability matters. But there was also evidence that the soil finisher had been rushed to market without adequate testing and that Glencoe had not adequately warned users of the potential danger of the machinery by use of decals or otherwise. (The jury had been instructed that a manufacturer has a duty to warn users of possible dangers.) Failure to warn is a negligence issue. *Bilotta v. Kelley Co.*, 346 N.W.2d 616, 625 (Minn. 1984); *Bigham v. J.C. Penney Co.*, 268 N.W.2d 892 (1978) (jury's verdict consistent where it found seller of flammable clothing

negligent but not strictly liable where there was evidence of defective clothing and of failure to warn users of potential hazards.) [1]

Taken in its totality, the evidence against Glencoe allowed a finding of either negligence or strict liability. The jury chose negligence.

## IV

### WAS EASTERLUND ENTITLED TO A DIRECTED VERDICT IN STRICT LIABILITY AGAINST GLENCOE AND PRINCE?

██ A directed verdict shall not be granted if different minds, reviewing all of the evidence, could reasonably arrive at different conclusions. *See, Frey v. Montgomery Ward Inc.*, 258 N.W.2d 782 (Minn. 1977). A court of review must consider the evidence in light most favorable to the adverse party, keeping in mind that not every conflict in evidence is a basis for denial. *Zinnel v. Berghuis Const. Co.*, 274 N.W.2d 495 (Minn.1979).

██ The liability of Prince and Glencoe was a question for the jury. First, as to Prince, Glencoe's expert testified that Prince's cylinder was defective at the time of manufacture. He had tested the cylinder approximately one year after the accident. At that time, the cylinder leaked at an above average rate. The expert had removed the cylinder from the soil finisher to observe it closely. He concluded that Prince did not provide sufficient backing to a seal which protruded and leaked when the cylinder was charged with hydraulic fluid. His opinion was not challenged directly by any witness. But the fact that his tests were conducted so long after the time of manufacture was a matter that a jury could well consider in determining the reliability of his conclusion.

The year prior to the accident Easterlund possessed the soil finisher and had stored it outside during the winter contrary to the instruction manual. There was conflicting evidence about whether thermal effects would have caused loss of fluid. Prior to the accident, Easterlund employees did not take certain normal precautions. The cylinders were not inspected or charged even though an Easterlund employee was aware that hydraulic systems may lose their charge for a variety of reasons. The wings of the machine were not "sucked up", a simple precaution involving the pulling of a hand lever that would have indicated whether the cylinder was charged. Following the accident, the cylinder was charged and the soil finisher was sold without repair or modification and functioned properly for the new owner. From this evidence, a jury could well find the cylinder itself was not defective at time of manufacture but that improper maintenance may have contributed to loss of hydraulic fluid. Thus, a variety of factors may have caused the loss of hydraulic fluid and the resultant fall of the wing. A jury was entitled to weigh all of these factors in rejecting the expert's testimony and arriving at a finding of fault. *Erickson v. Strickler*, 252 Minn. 351, 90 N.W.2d 232 (1958).

Glencoe was no more subject to a directed verdict then Prince on the matter of the cylinder. As to the remaining allegations that the wing design and latch mechanism were inherently defective because they were changed after the accident, there were conflicting explanations given. Easterlund claims the change was an acknowledgement of defectiveness. Glencoe claimed the changes were for purposes of convenience rather than safety. These were jury questions. The denial of directed verdicts was proper.

---

**1.** We are mindful of *Hauenstein v. The Loctite Corporation,* 347 N.W.2d 272 (Minn.1984) recently issued by the Minnesota Supreme Court and believe it is distinguishable. In *Hauenstein,* the trial court submitted the case to the jury on theories of both negligence and strict liability although failure to warn was the only allegation of fault. The Supreme Court held prospectively that plaintiffs must elect their remedy, either negligence or strict liability, before submission to the jury.

**286**

## V

### WAS THE VERDICT AGAINST EASTERLUND BASED ON SUFFICIENT EVIDENCE?

 Easterlund contends that the evidence was not sufficient to support a finding of fault as to it. In order to grant Easterlund a new trial, we would have to find that the verdict apportioning negligence to Easterlund of 35% was manifestly contrary to the preponderance of the evidence and against the clear weight of the evidence. *State v. Pearson*, 260 Minn. 477, 110 N.W.2d 206 (1961). We cannot so find. Evidence pointing to Easterlund's liability has already been discussed. The evidence supports the verdict.

Affirmed.