Neoma **PETERSON**, as Trustee for the Heirs of Rodney R. Peterson, Respondent,

v.

**LITTLE–GIANT GLENCOE PORTABLE ELEVATOR DIVISION OF DYNAMICS CORPORATION OF AMERICA,** Respondent,

Easterlund Implement, Inc., Appellant.

**Prince Manufacturing Corporation, Respondent.**

No. C6–83–1376.

Supreme Court of Minnesota.

April 12, 1985.

Donald M. Jardine, John C. Dunlap, St. Paul, for appellant.

Robert T. Stitch, Minneapolis, for respondent.

## OPINION

YETKA, Justice.

This case comes to this court on a petition for further review of a decision of the Minnesota Court of Appeals. 349 N.W.2d 280. The case involves a products liability action arising from the death of Rodney R. Peterson while demonstrating farm equipment manufactured by Little-Giant Glencoe Portable Elevator Division of Dynamics Corporation of America (Glencoe) and owned by Easterlund Implement, Inc., (Easterlund). Both Glencoe and Easterlund were sued by Peterson's heirs. Glencoe impleaded Prince Manufacturing Corporation (Prince), the manufacturer of a hydraulic cylinder used on the farm implement that killed Peterson. The plaintiffs amended their complaint, bringing a direct action against Prince. All the defendants cross-claimed for contribution and indemnity. Peterson's employer, Lindsay Brothers, Inc., was not named in the suit since the heirs received workers' compensation benefits, thus making the employer immune from direct suit.

A jury found Glencoe 65% negligent, Easterlund 35% negligent, and Prince 0% negligent. After the jury verdict, Easterlund's petition for judgment notwithstanding the verdict was denied. The court did rule after the close of the evidence that Peterson and Easterlund's employees were engaged in a common enterprise and thus immune from a suit under tort by reason of the workers' compensation laws, but held that Easterlund was liable to Glencoe in the amount of $262,500, which represented 35% of a settlement made during trial with plaintiffs for total payments to plaintiffs of $750,000. We affirm the trial court on two of the issues raised, but reverse the trial court's award of contribution and remand for further action.

Rodney Peterson was killed on April 8, 1981, when a wing of a farm implement he was demonstrating fell on him. The implement was a 24′ 9″ Glencoe soil finisher. The finisher was manufactured by Little-Giant Glencoe Portable Elevator Division of Dynamics Corporation of America and sold to Lindsay Brothers, Inc., an implement dealer and Peterson's employer. Lindsay Brothers, in turn, sold the implement in the spring of 1980 to Easterlund Implement, Inc., on a floor plan arrangement. Part of the purchase price was paid immediately, with the remainder due when the implement was sold. Title remained with Lindsay Brothers. Prince Manufacturing Corp., the party impleaded by Glencoe, manufactured the hydraulic cylinder used to raise and lower the wing that fell on Peterson.

The soil finisher is a large piece of machinery designed to be towed behind a tractor. It was a new product designed to save time and fuel by allowing a farmer to prepare a seed bed in one pass. Since the implement is large, its ends were designed to fold up to facilitate transportation. The ends folded up like wings to roughly a 90-degree angle with the aid of a hydraulic system. During transport, the wings were held secure by pins.

The accident occurred when Peterson was helping prepare the soil finisher for a demonstration at the request of Easterlund. Peterson arrived early with Douglas Easterlund, several of Easterlund's em-

ployees, another Lindsay Brothers employee, and the owner of the farm. They intended to prepare the finisher and make a quick test run before breaking for lunch and then returning for the demonstration. According to the finisher's manual, the wings should be "sucked up," that is, the hydraulic system activated and the wings drawn in as far as they would go, before lowering them. This is a safety precaution to purge the system of any trapped air and to determine if the cylinders are fully charged. The wings were not, however, "sucked up." The Easterlund employees and the Lindsay Brothers employee climbed on top of the finisher to loosen some straps; Douglas Easterlund went to unpin the left wing; Peterson went to unpin the right wing. Just as Douglas Easterlund took his pin out, the left wing fell. Through luck or fate, he knows not which, Easterlund rolled away to safety. Before he could yell a warning, however, Peterson unpinned the right wing which immediately fell, driving him to the ground with fatal force.

After the accident, the cylinders were recharged with hydraulic fluid. They worked perfectly when tested and were sold to a Wisconsin farmer without modification and apparently performed well. A video tape showing the cylinder on the finisher working was played for the jury.

During trial, two settlements were reached. Prince and Glencoe agreed that, for $225,000, Glencoe would take over Prince's defense and indemnify Prince for all losses, including attorney fees. The Prince lawyers made no further appearances at trial.

The second settlement involved damages. The defendants agreed to settle all claims for $650,000 cash and an annuity with a present-day value of not less than $100,000. The plaintiffs continued to present evidence of the defendants' negligence. Part of the stipulation provided that Peterson would not be considered negligent. The jury was left to apportion fault between the defendants and found Glencoe 65% negligent, Easterlund 35% negligent, and Prince 0% negligent. No strict liability was found.

Easterlund raises three issues on appeal:

1. Did the trial court abuse its discretion by refusing to instruct the jury that Prince was to be represented by Glencoe after the settlement?

2. Was Easterlund entitled to a directed verdict in strict liability against Glencoe and Prince?

3. Was Glencoe entitled to contribution from Easterlund even though Easterlund was immune from a direct action by the plaintiffs because of workers' compensation law?

■■■ 1. When parties agree to a midtrial settlement, "the trial court and other parties should be immediately notified, and the terms of the agreement made a part of the record." *Frey v. Snelgrove*, 269 N.W.2d 918, 923 (Minn.1978). The trial court and other parties were so informed in this case and the terms of the agreement read into the record out of the jury's hearing. The jury should also be informed "if for no other reason than to explain the settling tortfeasor's conspicuous absence from the court room." Simonett, *Release of Joint Tortfeasors: Use of the Perringer Release in Minnesota*, 3 Wm. Mitchell L.Rev. 1, 30 (1977). The extent of disclosure of settlement terms is, however, within the discretion of the trial court. The jury should have "those facts necessary to arrive at a fair verdict to all parties * * *." *Frey*, 269 N.W.2d at 923.

Immediately after the settlement, the jury was informed:

I note there is an absence of a couple of the attorneys this morning, Mr. Hanson and Mr. Archibald. An agreement has been reached which will no longer require that the attorneys for Prince Manufacturing Corporation be present; however, you are advised that you are to continue to evaluate the evidence as to Prince and as to all other parties. Further instructions will be given to you upon conclusion of this trial on these particular matters.

Those further instructions were given the next day as the trial court instructed the jury following the close of the evidence:

> As mentioned to you yesterday, the parties did reach an agreement in this case and they reached an agreement among other things as to damages in the case. Therefore, you need not consider that matter but you will have to determine what proportion of negligence, if any, should be assigned to each of the three defendants: Easterlund Implement, Inc., Glencoe Portable Elevator, and Prince Manufacturing. Essentially, that will be your job, to make those determinations.

Thus, the jury was informed that Prince was still a party to the action despite the absence of its attorneys.

■ Easterlund claims that, "[d]espite unrebutted testimony that the hydraulic cylinder manufactured by Prince and used on the right wing of the soil finisher was defective, the jury returned a verdict of no liability against Prince." Contrary to counsel's assertion, the testimony was not unrebutted. Once charged, the cylinder worked well. It was sold, without repairs, to a Wisconsin farmer and worked fine. The jury saw a video tape of the actual cylinder, unrepaired and unmodified, working. When presented with conflicting evidence on an issue, this court can only assume that the jury weighed the evidence and found the losing side's evidence wanting.

■ Easterlund's concern that the jury did not have the facts necessary to consider the indemnity agreement is a concern that the jury could not properly weigh the credibility of witnesses. Counsel could have impeached any witnesses as this court noted in the *Frey* case: "[A] release agreement is admissible under Rule 408 of the Rules of Evidence, where it is offered for a purpose such as proving bias or prejudice of a witness * * *." *Frey*, 269 N.W.2d at 923. In this case, the settlement occurred fairly late in the 8-day trial, a day before its close. Most of the evidence about the cylinder was already in, and some evidence tending to show a defect came in after the settlement was disclosed. The plaintiff, as well as Easterlund, remained in the case as an adversary to Prince. In any event, any fault found in defendant Prince would likely have lessened Glencoe's fault, not Easterlund's fault. A defect in cylinder design would mitigate Glencoe's potential liability for a defective design, but not Easterlund's fault for improper handling of the implement. No prejudice resulted from the trial court's action.

The jury needed to know that, although the Prince attorneys were not in the courtroom, their client was still a part of the case. The trial court twice told the jury just that. The trial court did not abuse its discretion by refusing to give the jury more explicit instructions about the settlement than it did.

■ 2. Easterlund contends that its motion for a directed verdict against Glencoe and Prince on the strict liability issue should have been granted. A motion for directed verdict presents:

> only a question of law for the trial court regarding the sufficiency of the evidence to present a fact question for the jury to decide. The test to be applied by the lower court *and this court on review* is that the motion should be granted only in those unequivocal cases where (1) in the light of the evidence as a whole, it would clearly be the duty of the trial court to set aside a contrary verdict as being manifestly against the entire evidence, or where (2) it would be contrary to the law applicable to the case.

*Walton v. Jones*, 286 N.W.2d 710, 714 (Minn.1979) (quoting *J.N. Sullivan & Assoc., Inc. v. F.D. Chapman Constr. Co.*, 304 Minn. 334, 336, 231 N.W.2d 87, 89 (1975)). The evidence must be viewed in the light most favorable to the parties opposing the motion; in this case, Glencoe and Prince. *Hanson v. Homeland Ins. Co.*, 232 Minn. 403, 404, 45 N.W.2d 637, 638 (1951). Directed verdicts are to be used cautiously. *Kolatz v. Kelly*, 244 Minn. 163, 166, 69 N.W.2d 649, 652 (1955); *Elias v. City of St. Paul*, 350 N.W.2d 442, 444 (Minn.Ct.App.1984).

■ Prince's only possible liability in this case would be from having manufactured a defective cylinder. However, in addition to such evidence of a defect, there was evidence that the cylinder might not have been defective. Immediately after the accident, when charged with hydraulic fluid, it worked well. It was sold without repairs or modifications and performed well, and there was a video tape showing the actual cylinder working. Additionally, there was testimony that any problems could have been caused by others. The problem could have arisen because the implement was left outside all winter by Easterlund or it could have been improperly hooked up to the tractor by one of Easterlund's employees and not checked by "sucking up" the wings. The evidence was not so conclusive that reasonable minds could not differ on whether the cylinder was defective and whether the blame for the incident might fall with someone other than Prince.

The claims against Glencoe stemmed from the design of the implement with the wings folding to 90 degrees rather than inward beyond 90 degrees. In spite of the evidence presented that folding the wings inward past 90 degrees would create a safer design, there was testimony to the contrary. The reason that the present models fold inward past 90 degrees is so that the transport width of the finisher is narrower. Glencoe's expert testified that a system with wings folding beyond 90 degrees could be less safe than one with a 90-degree wing angle. Since the system would be heavier, it would be harder to tell if the cylinder was charged and, since it would be harder to tell, the wing could easily be raised to the 90-degree level and collapse without any warning. Since there was conflicting evidence on the issue of whether the Glencoe design was defective, the issue was properly for the jury.

■ 3. Contribution, as an equitable doctrine, requires only that "persons under a common burden share that burden equitably." *Spitzack v. Schumacher*, 308 Minn. 143, 145, 241 N.W.2d 641, 643 (1976). Common liability is a requirement for contribution. *American Automobile Ins. Co. v. Molling*, 239 Minn. 74, 76, 57 N.W.2d 847, 849 (1953). While common liability is not subject to precise definition, it "does not depend solely on whether or not a plaintiff can enforce recovery against two or more defendants." *Horton v. Orbeth, Inc.*, 342 N.W.2d 112, 114 (Minn.1984).

This court has already determined that employers immune from direct suit by the workers' compensation laws can be liable for contribution. *Lambertson v. Cincinnati Corp.*, 312 Minn. 114, 257 N.W.2d 679 (1977). The manufacturer had liability to the employee in tort, the employer by the workers' compensation laws. There was no common liability *in tort* between them; nonetheless, they both were liable to the employee and thus common liability existed. *See Horton*, 342 N.W.2d at 115.

■ Easterlund was found to be in a joint enterprise with Peterson's employer and thus immune to suit in tort because of Minnesota's workers' compensation law. *See* Minn.Stat. § 176.061, subd. 1–4 (1984). Both parties to this appeal conceded at oral argument that this is true. The reason for the immunity is that the joint enterpriser can be liable, at least in part, for the workers' compensation benefits through the employer's subrogation rights. *Id.* at subd. 3. In effect, the joint enterpriser acts as an employer of the injured worker. The common enterpriser is liable to the plaintiff through the subrogation rights of the employer. Thus, Glencoe has liability to the plaintiff in tort while Easterlund has liability to the plaintiff through the workers' compensation statute. Common liability, therefore, exists. Contribution is applicable to a joint enterpriser immune to direct suit by the plaintiff.

■ Under *Lambertson*, the right to recover contribution is not absolute. The employer is liable for contribution "in an amount proportional to its percentage of negligence, but not to exceed its total workers' compensation liability to plaintiff." *Lambertson*, 312 Minn. at 130, 257 N.W.2d at 689. The liability for workers' compensation benefits includes not only

those paid, but also those payable in the future. *E.g., Cronen v. Wegdahl Coop. Elevator Assoc.*, 278 N.W.2d 102 (Minn. 1979). Since the joint enterpriser acts as an employer, its liability is governed by the same rules that govern the employer's liability. The joint enterpriser is liable only to the extent of its percentage of fault, but no more than its liability for workers' compensation benefits through the employer's subrogation rights.

In this case, Peterson's heirs must have elected to proceed to collect benefits under the Workers' Compensation Act because the parties concede benefits were paid by Lindsay Brothers. Since Lindsay Brothers and Easterlund were co-employers, they should be treated as one entity for purposes of the Workers' Compensation Act and thus are liable for workers' compensation benefits. Also, under *Lambertson*, Lindsay Brothers and Easterlund are subject to the claims of contribution on the part of the third party, Glencoe. However, their exposure to contribution is limited to the amount of workers' compensation benefits paid pursuant to our decision in *Lambertson*. The total settlement of $750,000 paid to the plaintiffs prior to jury verdict had to contemplate the workers' compensation benefits paid. Presumably, Lindsay Brothers had a right to claim reimbursement for those payments even though the record is not clear on this point. We believe that the disposition of this case outlined above arrives at an equitable result and is in total consistency with our decision in *Lambertson* and with our case of *Peterson v. Kludt*, 317 N.W.2d 43 (Minn.1982).

In summary, if the workers' compensation statutes are to have any validity, an injured employee cannot sue his employer in tort, just as we held in the case of *Peterson v. Kludt* that he cannot sue his co-employee. Second, employers held to be engaged in a joint enterprise under the statute are collectively liable to the employee for workers' compensation benefits and stand together in the same shoes. Third, if *Lambertson* has any validity, joint employers can be called to contribute to a third party held liable in tort to the extent the joint employers' negligence was found to contribute towards the injury—here, 35%. Fourth, the exposure to contribution to the third party tortfeasor is limited to the amount of workers' compensation benefits paid or to be paid under the statute. Fifth, since Easterlund was found 35% negligent, Lindsay Brothers and Easterlund are jointly liable for contribution of 35% of any amounts due, but subject to a limit of the workers' compensation benefits due under the statute.

We feel compelled to comment on the sorry state of the record in this case. Here we have a case where the employer Lindsay Brothers was not even made a party to this action. We do not know the extent of the workers' compensation payments made by Lindsay Brothers to Peterson's heirs. The $750,000 settlement contains language by the parties purporting to settle without regard to workers' compensation benefits paid. We do not know whether Lindsay Brothers has made a claim against Easterlund or has sought subrogation against Glencoe.

However, on the basis of what we do know, we affirm the trial court and find that it did not abuse its discretion on its instructions to the jury with regard to the settlement made between Prince and Glencoe and that it did not err in failing to direct a verdict of strict liability against Glencoe and Prince. We reverse the trial court on ordering contribution in favor of Glencoe and against Easterlund in the amount of $262,500, which amounts to 35% of the settlement arrived at with plaintiff, because such contribution cannot be determined until we know the extent of the workers' compensation benefits paid by Lindsay Brothers. Neither Lindsay Brothers nor Easterlund, as joint enterprisers and employers, can be liable for contribution in an amount larger than the workers' compensation benefits to which they are exposed.

Affirmed in part, reversed in part, and remanded.