Donald SCHLEICHER, Respondent (C1–85–2035), Appellant (C6–85–2080),

v.

LUNDA CONSTRUCTION COMPANY, Appellant (C1–85–2035), Respondent (C6–85–2080),

and

ADVANCE SHORING COMPANY, Defendant and Third Party Plaintiff, Respondent,

v.

CEMSTONE PRODUCTS COMPANY, Third Party Defendant, Respondent,

John Edman, Third Party Defendant.

Nos. C1–85–2035, C6–85–2080.

Court of Appeals of Minnesota.

April 1, 1986.

Review Granted May 29, 1986.

**16**

Russell M. Spence, Michael C. Snyder, Patrick Horan, Mark D. Streed, Meshbesher, Singer & Spence, Minneapolis, for Donald Schleicher.

Gene P. Bradt, James A. Schaps, John H. Guthmann, Hansen, Dordell, Bradt, Odlaug & Bradt, St. Paul, for Lunda Const. Co.

Richard T. McHaffie, St. Paul, for Advance Shoring Co.

Mark A. Fonken, Jardine, Logan & O'Brien, St. Paul, for Cemstone Products Co.

Heard, considered, and decided by CRIPPEN, P.J., and WOZNIAK and SEDGWICK, JJ.

## OPINION

WOZNIAK, Judge.

On August 19, 1974, appellant Donald Schleicher, a cement truck driver for respondent Cemstone Products Company, was injured in a construction accident while unloading cement at a site in St. Paul. He collected workers' compensation benefits from Cemstone and brought negligence actions against appellant Lunda Construction Company, the general contractor on the project, and respondent Advance Shoring Company, one of the subcontractors.

Lunda appeals from an order granting summary judgment in favor of Advance and dismissing Advance from the suit. The trial court granted summary judgment on the grounds that Advance was engaged in a common enterprise with Cemstone and that, because Schleicher had elected to collect workers' compensation benefits from Cemstone, his action against Advance was barred by Minn.Stat. § 176.061 (1984).

In this appeal, Lunda also raises issues presented in a second order of the district court. This order, dated September 9, 1985, denied Lunda's motion to join Advance by way of a third-party action for contribution.[1]

We reverse the order granting summary judgment in favor of Advance and remand for further proceedings. Because we reverse this order, it is unnecessary to reach the issues presented in the second order.

### FACTS

In 1973 Lunda entered into a highway construction contract with the State of Minnesota for improvements on a bridge deck at the intersection of Interstate 94 and State Highway 61 in St. Paul. Lunda was the general contractor on the project. Lunda subcontracted portions of the project to Advance and Cemstone.

Cemstone, plaintiff's employer, delivered concrete to the bridge site. Advance owned and set up a hopper-conveyor system which transported poured concrete from Cemstone's trucks to the "placing and finishing" crew, supplied by Lunda, who were responsible for setting the poured concrete in the areas to which it was transported.

The bridge ran east-west. At the time of the accident, the crews were pouring cement for the south half of the bridge deck, which constituted the westbound traffic lanes. The eastbound traffic lanes were barricaded off and remained open during this phase of the construction. The hopper-conveyor system ran from west to east along the south half of the bridgedeck. Two Advance employees were on the site, one at each end of the hopper-conveyor. When making their deliveries, the cement trucks would come from the east and travel to the west end of the bridgedeck. The trucks would pull past the hopper-conveyor and then back their trucks up between the median and the barricade. When dumping

their loads two abreast, there would be approximately 12 to 18 inches between the trucks. The trucks would dump their loads during normal traffic hours.

One Cemstone employee was at the work site intermittently. He had the title of job coordinator and his function was to coordinate the deliveries from Cemstone's plant to the work site.

Elroy "Junior" Wright, the Advance employee stationed at the west end of the hopper-conveyor, directed the trucks as they backed up. Wright then helped the drivers place their chutes in the hopper. He did this for every truck driver who unloaded that day. After they had pulled up, the drivers would leave the truck cab and walk to the rear of the truck, where they would climb up on the truck and prepare to operate the controls which controlled the mixture of cement. When the drivers had unloaded their cement, Wright testified that he "occasionally" helped them scrape out and fold up their chutes and lift them out of the hopper, depending on whether or not he was needed to "pitch in." According to Schleicher, Wright would then order the driver to drive away. At one point in his deposition, Wright testified that he never gave such orders, that it was unnecessary to tell the drivers when to pull away. He later admitted he "occasionally" gave such orders to the drivers, but not at the time the accident occurred.

Wright testified that there was no custom or understanding in the industry as to whose job it was to put the chutes into the hopper and take them out. He stated that there was never any meeting or agreement with the truck drivers as to who would do it on this particular site.

On the date of the accident, Schleicher was making his third delivery to the construction site. He backed his truck up next to the hopper while another Cemstone driver, John Edmon, was dumping his load. Wright assisted Schleicher in placing his

---

1. Lunda filed a petition for discretionary review of the September 9 order on October 11, 1985. By order dated November 5, 1985 (C5-85-1910), this court denied the petition but ordered that Lunda could raise the issues presented in the September 9 order in its appeal of the summary judgment order.

cement chute inside the hopper. Wright testified that he left the area as Schleicher prepared to dump his cement. Schleicher positioned himself at the controls to begin pouring the cement. Edmon's truck was emptied and Schleicher immediately began to discharge cement into the hopper. Schleicher testified that the last thing he saw before the accident was Wright scraping out Edmon's chute. He then heard Wright order Edmon to "Get the hell out of here. Go." Wright, on the other hand, testified that he left the area immediately after Schleicher backed in and was standing across the median of the highway when the accident occurred. He denied ordering Edmon to drive out, and stated that he never saw the accident.

Edmon's chute was still in the hopper as he drove away. The lip of the chute caught in the hopper and the entire hopper-conveyor system began to move. The movement caused Schleicher's chute to move rapidly toward him and pin him against his truck.

## ISSUE

Were respondent Advance Shoring Company and respondent Cemstone Products Company engaged in a "common enterprise" or "the same or related purposes" within the meaning of Minn.Stat. § 176.-061, subd. 4 at the time of the plaintiff's injury?

## ANALYSIS

In reviewing an entry of summary judgment, the facts are viewed in the light most favorable to the party against whom summary judgment was granted, and the sole issue before this court is whether an issue of *material* fact exists. *Ostendorf v. Kenyon*, 347 N.W.2d 834, 836 (Minn.Ct.App. 1984).

Minn.Stat. § 176.061, subd. 1 (1984), the election of remedies provision of the workers' compensation statute, provides:

If an injury or death for which benefits are payable occurs under circumstances which create a legal liability for damages on the part of a party other than the employer and at the time of the injury or death that party was insured or self-insured in accordance with this chapter, *the employee,* in case of injury, *or the* employee's dependents, in case of death, *may proceed either at law against that party to recover damages or against the employer for benefits, but not against both.*

(Emphasis added.)

The election of remedies defense, however, only applies where the employer and the third party are engaged in a "common enterprise" or "the same or related purpose." Section 176.061, subd. 4 provides:

The provisions of subdivisions 1, 2, and 3 apply only where the employer liable for benefits and the other party legally liable for damages are insured or self-insured and engaged, in the due course of business in, (a) furtherance of a *common enterprise,* or (b) in the accomplishment of the *same or related purposes* in operations on the premises where the injury was received at the time of the injury.

(Emphasis added.)

The reason for the joint enterpriser's immunity is that the joint enterpriser can be liable, at least in part, for the workers' compensation benefits through the employer's subrogation rights. *Peterson v. Little-Giant Glencoe Portable Elevator Division of Dynamics Corp.*, 366 N.W.2d 111, 116 (Minn.1985).

■ In order for the "common enterprise" defense to serve as a bar to employee claims against third parties, three requirements must be met:

(1) The employers must be engaged on the same project;

(2) The employees must be working together (common activity); and

(3) In such fashion that they are subject to the same or similar hazards. *McCourtie v. United States Steel Corp.*, 253 Minn. 501, 506, 93 N.W.2d 552, 556 (Minn.1958).

■ The supreme court has held that the mere supplying of a product by one em-

ployer to another does not bring the employers within the common enterprise provision. *See, e.g., Swanson v. J.L. Shiely Co.*, 234 Minn. 548, 48 N.W.2d 848 (1951); *Tevoght v. Polson*, 205 Minn. 252, 285 N.W. 893 (1939). These cases are dispositive of the issue here.

In *Swanson*, the plaintiff, a carpenter, was an employee of Raymer Hardware Company, which was dismantling an overhead garage door as part of a project to build an extension onto a warehouse. Steenberg Construction Company was the general contractor for the extension; defendant J.L. Shiely was a supplier of concrete. As one of Steenberg's employees was helping one of the Shiely drivers back his truck into position to unload inside the warehouse, the truck knocked over the ladder on which plaintiff was standing. The court held that there was no common enterprise between plaintiff's employer and either Steenberg or Shiely.

> [W]e find no mutuality of hazard between Raymer's employes, who were removing the door, and either Shiely's driver, who was delivering concrete, or Steenberg's employes, who were then engaged elsewhere on the premises in wholly different activities. We hold that the [election of remedies provision] does not avail either defendant.

> There is an additional reason why Shiely may not avail itself of the [election of remedies provision] as a defense. Shiely was merely delivering a commodity to Steenberg. *Duus v. Duus*, 181 Minn. 232, 232 N.W. 114; *Anderson v. Interstate Power Co.*, 195 Minn. 528, 263 N.W. 612; *Tevoght v. Polson*, 205 Minn. 252, 285 N.W. 893, *Gentle v. Northern States Power Co.*, 213 Minn. 231, 6 N.W.(2d) 361. *These cases hold squarely that the mere supplying and delivery of a product by one employer to another does not bring the employers within [the election of remedies provision]. Shiely is in the same position as if it had been delivering sand or cement separately to Steenberg. It did nothing but unload the mixture at the points designated by Steenberg. It was not engaged in a common enterprise or related purpose with either Steenberg or Raymer.*

*Swanson*, 234 Minn. at 559–60, 48 N.W.2d at 855.

Similarly, in *Tevoght*, the plaintiff, an employee of the City of Minneapolis at its incinerator, was injured by a truck delivering coal to the incinerator. The court cited a prior case that held that:

> the mere supplying of a product by one employer to another did not bring the employers within [the election of remedies provision], that is, the vending and delivery of supplies upon the premises of one of the employers does not amount to either a furtherance of a common enterprise or to the accomplishment of the same or related purposes.

*Tevoght*, 205 Minn. at 255, 285 N.W. at 894 (citing *Anderson v. Interstate Power Co.*, 195 Minn. 528, 532–33, 263 N.W. 612, 614 (1935)).

 Advance argues that this case is distinguishable from the "mere delivery" line of cases. According to this argument, Cemstone, with its trucks, and Advance, with its hopper-conveyor system, were involved in a single, ongoing operation of unloading cement and conveying it to the placing and finishing crew at the other end of the bridge. In other words, according to Advance, more than mere delivery was taking place here. This argument fails.

As were the employers in *Swanson* and *Tevoght*, Cemstone was merely a supplier of a product to the work site. Although the facts regarding the extent to which an Advance employee was assisting with the unloading of the cement are in dispute, these facts are not material for purposes of the summary judgment order at issue here. In a typical delivery situation, an employee of the deliveree may assist in unloading the product being delivered. The Minnesota Supreme Court has never held that this creates an exception to the *Swanson* and *Tevoght* line of cases. The fact that the product involved here was cement makes no difference.

After the trial court granted Advance's motion for summary judgment, Lunda moved the court for leave to serve a third-party complaint seeking contribution from Advance. The trial court denied Lunda's motion. Appellant also argues that the common enterprise provisions of section 176.061 subds. 1 and 4, violate the due process and equal protection clauses of the United States and Minnesota constitutions. Because we reverse the order granting summary judgment and hold that Advance is not immune from direct suit under the common enterprise defense, it is unnecessary to reach these issues.

### DECISION

Reversed and remanded.