**MINNESOTA BREWING COMPANY, Respondent,**

v.

**EGAN & SONS CO., petitioner, Appellant.**

**No. C3–96–1724.**

Supreme Court of Minnesota.

Jan. 22, 1998.

---

William M. Bradt, Hansen, Dordell, Bradt, Odlaug & Bradt, St. Paul, for Appellant.

Ted E. Sullivan, Eric A. Nerness, William L. Davidson, Lind, Jensen & Sullivan, Minneapolis, for Respondent.

John G. Brian, III, Brad J. Miller, Felhaber, Larson, Fenlon & Vogt, St. Paul, for amicus curiae Minnesota Specialty Contractors Trade Associations.

A. Patrick Leighton, Leonard W. Glewwe, Moore, Costello & Hart, P.L.L.P., St. Paul, for amicus curiae Associated General Contractors of Minnesota.

## OPINION

BLATZ, Justice.

This case raises the question of whether an employer asserting its subrogation right under Minnesota's Workers' Compensation Act ("Act") can collect workers' compensation benefits paid and payable to its injured employee from a third party engaged in a common enterprise with the employer without proving negligence. Alfred Berget was injured in a work-related accident and subsequently elected to collect workers' compensation benefits from his employer, Minnesota Brewing Company ("MBC"). Berget was thus precluded from bringing a negligence action against third-party Egan & Sons, Co. ("Egan"), which was engaged in a common enterprise with MBC. MBC, however, brought a subrogation action against Egan for half of the workers' compensation benefits paid and payable to Berget. Egan argued that it had no such liability absent a finding of fault. The district court denied cross-motions for summary judgment and certified two questions to the court of appeals. The court of appeals determined that MBC was entitled to recover from Egan 50 percent of the workers' compensation benefits paid and payable to Berget, irrespective of any fault by Egan. This court granted Egan's petition for review.

We reverse and remand.

### I.

In 1991, appellant, MBC, purchased the previously closed Schmidt Brewery in St. Paul. As part of its plan to make the brewery operational, MBC entered into an oral agreement with the respondent, Egan, a plumbing and pipe fitting contractor. Under its contract with MBC, Egan was to supply pipe

fitting services necessary to make the brewery operational. MBC employees determined which pipes and valves needed to be repaired and provided all the materials needed for the repairs. Egan employees made the repairs and were supervised by MBC's brewmaster, Siegfried Plagens, and his assistant, Mike Muehlbauer. Plagens coordinated the pipe fitting projects with the other re-opening activities in the brewery. MBC paid Egan a fee for its services covering the wages of Egan's employees who worked at MBC, the workers' compensation premiums to insure the pipe fitters, employee benefits, permit fees, and other out-of-pocket expenses.

Peter Schultz and James Abbott, who were pipe fitters employed by Egan, worked at MBC under the contract. On November 14, 1991, Muehlbauer informed Schultz that the valves in the swirl room needed to be repaired. The swirl room is where the brew is boiled and purified and then pumped through valves into coolers. Per Schultz's direction, Abbott removed the valves and took them to the site repair shop for renovation. Meanwhile, Plagens, apparently unaware that the valves had been removed, instructed MBC employee Alfred Berget to clean the swirl room. While Berget was in the swirl room, the pump was activated, causing the brew to move from the swirl tank into the coolers. Because the valves had been removed, the boiling brew flowed out of the pipe, causing Berget to sustain severe burns.

As a result of the accident, Berget received workers' compensation benefits from MBC. Berget subsequently brought a personal injury action against Egan alleging negligence. MBC intervened in the suit to recover from Egan workers' compensation benefits that MBC paid to Berget, and Egan brought a

*Lambertson* contribution action against MBC.[1] The district court granted summary judgment for Egan, finding that it was engaged in a common enterprise with MBC and, therefore, Berget's personal injury action against Egan was barred under the election of remedies provision in the Act. There being no sustainable tort action by Berget against Egan, Egan's *Lambertson* action was also dismissed.

After beginning the appeals process, Berget entered into a *Naig* settlement[2] with Egan and the case was dismissed. However, MBC continued to pursue its subrogation action against Egan. MBC moved for summary judgment, contending that because MBC and Egan were engaged in a common enterprise, Egan was liable for 50 percent of Berget's workers' compensation benefits. Egan also moved for summary judgment, claiming that absent a finding of negligence, it did not have any liability to MBC. The district court denied the cross-motions for summary judgment, finding that there was an unresolved factual issue regarding fault. The court later certified the following questions to the court of appeals:

> (1) Is MBC precluded from suing Egan for contribution[3] for workers' compensation benefits when Egan's employee injured MBC's employee while both employees were working as co-employees?
>
> (2) If not, what cause of action does MBC have against Egan?

The court of appeals answered certified question number one in the negative and, in response to certified question number two, concluded that MBC had a valid claim for non-fault-based contribution from Egan. This court granted Egan's petition for review.

---

**1.** In *Lambertson v. Cincinnati Corp.*, we held that while an employer who had paid workers' compensation benefits to its injured employee is immune from a tort suit brought by an employee, an employer may be liable in an action brought by a third party. 312 Minn. 114, 257 N.W.2d 679 (1977). We limited an employer's contribution liability, however, to an amount proportional to its negligence, but not to exceed its workers' compensation liability to the injured employee. *Id.*

**2.** A *Naig* settlement is one made by the employee for damages not paid under the Workers' Com-

pensation Act. *Naig v. Bloomington Sanitation*, 258 N.W.2d 891 (Minn.1977). It does not affect the employee's right to receive further workers' compensation benefits, nor does it affect the employer's subrogation right. *Id.*

**3.** While the court of appeals, district court and MBC refer to this as a "contribution" action, the only statutory cause of action MBC has as an employer against Egan at this time is a subrogation action.

Certified questions are questions of law which we review de novo. *Watson v. Metropolitan Transit Comm'n,* 553 N.W.2d 406, 411 (Minn.1996).

## II.

■ Minnesota's Workers' Compensation Act,[4] implemented in 1913, was designed as a no-fault recovery system for employee work-related injuries. *Lambertson v. Cincinnati Corp.,* 312 Minn. 114, 120, 257 N.W.2d 679, 684 (1977). Under the Act, an injured employee is guaranteed compensation from his or her employer for work-related injuries regardless of the employee's fault or the employer's lack of fault, in exchange for forfeiting the right to sue the employer in tort. *Id.* at 120–21, 257 N.W.2d at 684. In most circumstances, the employee retains his or her common law right to recover from a negligent third party. However, if the third party is engaged in a common enterprise[5] with the employer, the injured employee must choose between either collecting workers' compensation benefits from his or her employer or suing the third party for damages. Minn.Stat. § 176.061, subds. 1, 4 (1996). If the employee brings an action against the third party engaged in a common enterprise with the employer, the amount of damages he or she can collect is limited to the amount fixed by the Act. Minn.Stat. § 176.061, subd. 2 (1996).

■ When the employee elects to collect workers' compensation benefits, the employer, who is subrogated to the rights of the employee, may bring suit against the third party to recover the aggregate amount of workers' compensation benefits paid and payable. Minn.Stat. § 176.061, subd. 3 (1996). Importantly, the Act does not give the employer a wholly separate cause of action; rather, the employer may assert only those rights that the employee had at the time of the injury. *Kaiser v. Northern States Power Co.,* 353 N.W.2d 899, 903 (Minn.1984); *Thornton Bros. v. Reese,* 188 Minn. 5, 8, 246 N.W. 527, 529 (1933).

■ MBC claims that under the Act, a third party, merely by being engaged in a common enterprise with an employer, has a statutory duty to reimburse the employer for 50 percent of the workers' compensation benefits the employer paid to its own employee. However, the only means by which MBC may recover its paid and payable workers' compensation benefits from Egan is by its subrogation right.[6] An employer's subrogation right is set forth in Minn.Stat. § 176.061, subdivisions 1 and 3 of the Act, which provide:

> Subdivision 1. **Election of remedies.** If an injury or death for which benefits are payable occurs under circumstances which create a legal liability for damages on the part of a party other than the employer and at the time of the injury or death that party was insured or self-insured in accordance with this chapter, the employee, in case of injury, or the employee's dependents, in case of death, may proceed either at law against that party to recover damages or against the employer for benefits, but not against both.

> \* \* \* \* \* \*

> Subd. 3. **Election to receive benefits from employer; subrogation.** If the employee or the employee's dependents elect to receive benefits from the employer, or the special compensation fund, the employer or the special compensation fund has a right of indemnity or is subrogated to the right of the employee or the employee's dependents to recover damages against the

---

4. Minnesota's Workers' Compensation Act is contained in Minn.Stat. §§ 176.001–176.861 (1996).

5. A common enterprise exists when the employer liable for benefits and the other party legally liable for damages are insured or self-insured and: (1) the employers are engaged on the same project; (2) the employees are working together; and (3) the employees are working in such a fashion that they are subject to the same or similar hazards. *McCourtie v. United States Steel Corp.,* 253 Minn. 501, 506, 93 N.W.2d 552, 556 (1958).

6. To the extent that MBC claims that it has a valid cause of action for indemnity under Minn. Stat. § 176.061, subd. 10, we conclude that the court of appeals appropriately determined that subdivision 10 is inapplicable to this case. *See Minnesota Brewing Company v. Egan & Sons Co.,* 560 N.W.2d 111, 115 (Minn.App.1997).

other party. The employer, or the attorney general on behalf of the special compensation fund, may bring legal proceedings against the party and recover the aggregate amount of benefits payable to or on behalf of the employee or the employee's dependents, together with costs, disbursements, and reasonable attorney's fees of the action.

\* \* \* \* \* \*

Under these provisions, an employer who has paid workers' compensation benefits to an injured employee may bring a subrogation action against a third party who has a "legal liability for damages." Therefore, whether the Act confers on MBC a right to recover from Egan turns on what constitutes a "legal liability for damages." This court interpreted this language over 75 years ago and determined that an employer's subrogation right under the election of remedies provision is a right to recover from a third party only if that party was *negligent. Carlson v. Minneapolis St. Ry. Co.*, 143 Minn. 129, 133, 173 N.W. 405, 406 (1919).[7]

In *Carlson,* an employee was killed in a work-related accident when the wagon he was driving was struck by one of the defendant's street cars. *Id.* at 130–31, 173 N.W. at 405. The employee's wife collected benefits from the employer, Carlson. *Id.* at 131,

173 N.W.2d at 405. Carlson, asserting its subrogation right, then sought to recover from the railway company, but was denied relief because the jury found that the railway company had not been negligent. *Id.* Carlson appealed claiming that it was entitled to recover from the railway company regardless of whether the railway company was negligent. *Id.* at 132, 173 N.W. at 406.

After construing the statutory language of the Workers' Compensation Act, the *Carlson* court disagreed: [8]

> The language is susceptible of but one meaning. It speaks for itself. The phrase 'legal liability for damages,' we think, has reference to common-law liability. The act does not take from the employee or his dependents the common-law right of recovery against the defendant company, if it was negligent. \* \* \* The jury found that there was no negligence on the part of the defendant. There being no negligence, there was no common-law right of action.

*Carlson,* 143 Minn. at 133, 173 N.W. at 406. The *Carlson* court unambiguously concluded that an employer's subrogation right is based in negligence. Similarly, in 1979, this court specifically addressed the meaning of the phrase "circumstances which created a legal liability for damages" as used in subdivision 5 of Minn.Stat. § 176.061 (1996).[9] *Janzen v.*

---

7. When *Carlson* arose, the election of remedies provision applied to all employers and employees under the Act. Minn. Gen.Stat. § 8229 (1913). The legislature amended the Act in 1923 to limit the election of remedies provision to situations where the employer and the third party are engaged in a common enterprise or the same or related purposes. Minn. Gen.Stat. § 4291 (1923).

8. When *Carlson* was decided the election of remedies provision of the Workers' Compensation Act provided:

> [W]here an injury or death for which compensation is payable under part 2 of this act is caused under circumstances also creating a legal liability for damages on the part of any party other than the employer, such party also being subject to the provisions of part 2 of this act, the employe[e] in case of injury or his dependents in case of death, may, at his or their option, proceed either at law against such party to recover damages, or against the em-

ployer for compensation under part 2 of this act, but not against both.

> \* \* . \* \* \* \*

> If the employe[e] or his dependents shall elect to receive compensation from the employer, then the latter shall be subrogated to the right of the employe[e] or his dependents to recover against such other party, and may bring legal proceedings against such party and recover the aggregate amount of compensation payable by him to such employe[e], or his dependents hereunder, together with costs and the disbursements of such action and reasonable attorney's fees expended by him therein.

Minn. Gen.Stat. § 8229 (1913). The key language in this provision mirrors that of the current Act.

9. Minnesota Statutes § 176.061, subd. 5 provides for an employer's subrogation right to sue a third party with whom it is not engaged in a common enterprise. It provides, in part:

> If an injury or death for which benefits are payable is caused under circumstances which created a legal liability for damages on the part of a party other than the employer, that party

*Land O' Lakes Inc.,* 278 N.W.2d 67 (Minn. 1979). The *Janzen* court concluded that "the word 'damages' limits the all-encompassing phrase 'legal liability,'" and that "damages" "has become a concomitant part of our legal terminology when discussing *tort liability.*" *Id.* (emphasis supplied.).

Since *Carlson,* this court has not wavered in its interpretation of an employer's subrogation right under the Act. *See, e.g., Hansen v. Northwestern Fuel Co.,* 144 Minn. 105, 108, 174 N.W. 726, 727 (1919) (explaining that if the injured employee takes compensation under the Act, his employer is subrogated to the employee's *common-law action* against the third party; the statute gives no right to proceed against the third party under the Act); *Thornton Bros. v. Reese,* 188 Minn. at 8, 246 N.W. at 529 (clarifying that an employer's subrogation action against a third party is a tort action); *O'Malley v. Ulland Bros.,* 549 N.W.2d 889, 894 (Minn.1996) (stating, "Under Minn.Stat. § 176.061, subds. 1 and 4, an injured employee must choose between receiving workers' compensation benefits from the employer and a common-law negligence action against a third party when the employer and the third party are engaged in furtherance of a common enterprise."). Notwithstanding our unqualified and enduring interpretation of the plain language of the Act, MBC relies, in part, on dicta from *O'Malley v. Ulland Bros.* to conclude that a third party engaged in a common enterprise with an employer is statutorily liable for 50 percent of the workers' compensation benefits, irrespective of its fault.

■ In *O'Malley,* an injured employee who had collected workers' compensation benefits from his subcontractor employer brought a negligence action against the general contractor. 549 N.W.2d 889, 890 (Minn. 1996). The issue was whether the subcontractor and the general contractor were engaged in a common enterprise, thereby implicating the election of remedies provision. *Id.*

at 894. Before conducting an analysis of whether the parties were engaged in a common enterprise, this court reiterated the rationale for limiting the election of remedies provision to common enterprise situations:

> [I]f the third party bore a certain relation to the employer, and was itself under the compensation act, then the employe[e] should be confined to his remedy under the compensation act. From a civic, economical and sociological point of view this position is sound. This reasoning rests upon the fact that the employe[e] should get from the third party the same award that he would get from his own employer if it alone were responsible for the acts proximately causing his injury. Being engaged in a 'common enterprise' or in the 'accomplishment of the same' or 'related purposes' in operation on the premises puts all the employers so engaged in the relative, if not actual, position of an employer of any such employe[e]. * * * In short, the community of interest gives the third party, who is subject to the compensation act, under this statute the status of an employer toward the employe[e].

*Id.* at 894–95 (*quoting Rasmussen v. George Benz & Sons,* 168 Minn. 319, 325, 210 N.W. 75, 77 (1926)) (alteration in original). Arguably, when read separately, this passage may lend support to MBC's assertion that a third party who is engaged in a common enterprise with an employer has a statutory obligation to pay workers' compensation benefits to the employer's employee. However, the portion of the *Rasmussen* opinion quoted by this court in *O'Malley,* and by the court of appeals below, omits a significant part of the passage which reads, "[t]he third party being guilty of actual negligence, which is essential to its liability, should carry the burden in preference to the employer." *Rasmussen,* 168 Minn. at 323, 210 N.W. at 77. This sentence unqualifiedly indicates that the liability of a third party engaged in a common

being then insured or self-insured in accordance with this chapter, and the provisions of subdivisions 1, 2, 3, and 4 do not apply, or the party other than the employer is not then insured or self-insured as provided by this chapter, legal proceedings may be taken by the employee or the employee's dependents in ac-

cordance with clause (a), or by the employer, or by the attorney general on behalf of the special compensation fund, in accordance with clause (b), against the other party to recover damages, notwithstanding the payment of benefits by the employer or the special compensation fund or their liability to pay benefits.

enterprise with an employer is dependent upon the third party's negligence. This court did not hold, nor does the Act provide, that a third party, simply by virtue of being engaged in a common enterprise with an employer, is equally liable for workers' compensation benefits to the employer's employees.

Likewise, *Rasmussen* did not state either expressly or impliedly that such a third party is liable to pay compensation benefits outright to an injured employee of the employer. Rather, *Rasmussen* limited the tort liability of a third party engaged in a common enterprise, or in the accomplishment of the same or related purposes with the employer,[10] to the amount that an employee could have collected from his or her own employer. *Id.* The court reasoned that the "community of interest" between the employer and such a third party puts the third party in the same or relative position of an employer for the purpose of affording the third party protection from a greater damages award than would be imposed upon the employer. *Id.* This community of interest, however, does not put such a third party and the employer on equal footing for the purpose of imposing statutory liability for workers' compensation benefits.

Indeed, in 1941 this court rejected the notion that a third party engaged in a common enterprise with an employer was a "co-employer" in all respects under the Act. *See Hartford Accident & Indemn. Co. v. Schutt Realty Co.*, 210 Minn. 235, 297 N.W. 718 (1941). In *Hartford*, the employer's insurer, Hartford, sued a negligent third party that was engaged in the accomplishment of the same or related purposes with the employer to recover workers' compensation benefits Hartford had paid to the decedent-employee's family. *Id.* at 235, 236, 297 N.W. at 718, 719. The third party sought to assert as a defense the employee's contributory negligence. Hartford argued that the third party could not avail itself of this defense based on the premise that the "same or related purposes" provision of the Act conferred on third parties the status of employers with the consequent loss of the contributory negligence defense. *Id.* In concluding that the third party did not lose the defense in a subrogation negligence action by the employer's insurer, the *Hartford* court reasoned:

> There would be much force to the plaintiff's argument if the compensation act had in fact conferred upon such third party the status of an employer. But it has not. The similarity of his relationship to the real employer arises solely from the community of interest between them. *See Rasmussen v. George Benz & Sons*, 168 Minn. 319, 325, 210 N.W. 75, 212 N.W. 20. Whether the third party was negligent or not has no bearing upon this similarity. Yet before the third party can be held in a suit by one who has paid compensation benefits, he must have been negligent or the action will not prevail. *Carlson v. Minneapolis Street Ry. Co.*, 143 Minn. 129, 173 N.W. 405. This requirement alone distinguishes the third party from the employer who is liable for compensation irrespective of his negligence. § 4269.

*Hartford*, 210 Minn. at 236–37, 297 N.W. at 719. The *Hartford* court plainly distinguished a third party who is engaged in a common enterprise or the same or related purposes with an employer from an actual employer in the context of responsibility for workers' compensation benefits.

Nonetheless, MBC presents this court's decision in *Peterson v. Little Giant Glencoe Portable Elevator Div. of Dynamics Corp. of Am.* as support for the proposition that Egan's obligation to pay workers' compensation benefits is the natural consequence of the "immunity" afforded to it as a party engaged in a common enterprise. 366 N.W.2d 111 (Minn.1985). In *Peterson*, an employee was killed in a farm equipment accident during the course of employment. *Id.* at 113. The employee's heirs collected workers' compensation benefits from the employer and then brought a negligence action against both the manufacturer and the owner

---

**10.** In addition to situations where an employer and a third party are engaged in furtherance of a common enterprise, the election of remedies provision also applies to circumstances where an employer and a third party are engaged in the accomplishment of the same or related purposes. *See* Minn.Stat. § 176.061, subd. 4; *see also*, Minn. Gen.Stat. § 4291, subd. 1 (1923).

of the piece of equipment. The owner was engaged in a common enterprise with the employer. *Id.* at 116. The court presumed that Peterson's heirs had made an election to collect workers' compensation benefits and hence, his heirs could not recover in a direct suit against the owner due to the election of remedies provision. *Id.* at 116–17. However, this court held that the negligent owner was liable to the manufacturer for contribution to the damages award, but limited that liability to an amount proportional to its percentage of fault, not to exceed the amount of workers' compensation benefits paid or payable under the Act. *Id.*

In so holding, the *Peterson* court explained that "[s]ince the joint enterpriser acts as an employer, its liability is governed by the same rules that govern the employer's liability. * * * Since [the employer] and [the owner] were co-employers, they should be treated as one entity for purposes of the Workers' Compensation Act and thus are liable for workers' compensation benefits." *Peterson* 366 N.W.2d at 117. In discerning the intended effect of this language, again, we must be mindful of its context. The *Peterson* court referred to the negligent employer and the negligent third party with whom it was engaged in a common enterprise as "co-employers" for the limited purpose of calculating each party's fault-based liability to contribute to a damage award. The *Peterson* court held only that a negligent third party engaged in a common enterprise with an employer may be liable to another third party for contribution to a damage award in a tort suit. *Id.*

MBC, however, relying on dicta from *Peterson*, is asserting that a third party engaged in a common enterprise with an employer is a "co-employer" for the purpose of imposing a *statutory* obligation to contribute to workers' compensation benefits, irrespective of fault. Neither the Act itself nor the case law interpreting it provide a reasonable basis for this court to conclude that an employer and a third party engaged in a common enterprise with the employer are co-employers having equal workers' compensation liability to the employer's employees. The statutory provisions at issue here governing common enterprises do not expressly provide for such liability.

Moreover, unlike the provisions addressing common enterprises, the legislature has specifically provided for concurrent liability for workers' compensation benefits in at least one circumstance. Minnesota Statutes § 176.071 (1996), entitled, "Joint Employers; Contribution," provides:

> When compensation is payable under this chapter for the injury or death of an employee employed and paid jointly by two or more employers at the time of the injury or death these employers shall contribute to the payment of the compensation in the proportion of their wage liabilities to the employee. If any such employer is excluded from the provisions of this chapter and is not liable for compensation, the liability of those employers who are liable for compensation is the proportion of the entire compensation which their wage liability bears to the employee's entire wages.

Presumably, if the legislature had wanted to impose such liability on third parties engaged in a common enterprise, it would have done so.

MBC asks us to carve out a wholly new cause of action permitting an employer, through its subrogation right, to seek reimbursement for workers' compensation benefits from a third party that is engaged in a common enterprise with the employer without proving negligence. Creating a new right that is not within the language of Minnesota's statutory workers' compensation scheme, and is in fact contradictory to the plain language of the Act, is not within the province of this court. That role is fulfilled solely by the legislature. Accordingly, we conclude that MBC has a subrogation action against Egan only in negligence.

### III.

While we agree that Egan is not liable absent negligence, we reject Egan's claim that it is immune from a suit by MBC altogether due to the combined effect of the loaned servant doctrine and the Act's co-employee immunity provision. Egan's argument on this point is fairly complex. It proceeds as follows: (1) Egan's employees

were loaned servants to MBC and, therefore, co-employees of Berget; (2) Minnesota Statutes § 176.061, subd. 5, which provides that co-employees working for the same employer are not liable for one anothers' personal injuries absent gross negligence, would prohibit Berget from suing an Egan employee in negligence; (3) since Berget could not have sued Egan's employees, he could not have sued Egan under a theory of respondeat superior; (4) likewise, because MBC is asserting only a subrogation right, it cannot sue Egan. As there has been no finding that a loaned servant situation exists in this case, Egan's argument is based on a legally unsupported premise and must fail. Nonetheless, we take this opportunity to clarify the functions and applicability of the loaned servant doctrine and the co-employee immunity provision as they relate to this case.

 The loaned servant doctrine generally comes into play when determining which of two employers bears the ultimate responsibility for an employee's workers' compensation benefits, not for the purpose of rendering workers of separate employers "co-employees." *See Danek v. Meldrum Mfg. & Engineering Co., Inc.,* 312 Minn. 404, 252 N.W.2d 255 (1977). The loaned servant doctrine provides that if an employer loans an employee to another employer for a particular service, that employee may become the employee of the borrowing employer and may look to either employer for workers' compensation benefits. *Id.* at 407, 252 N.W.2d at 258. While there may arguably be support for the proposition that *if* a loaned servant situation existed, the employ-

ee of the borrowing employer and the employees of the lending employer *may* be deemed "co-employees," there is no authority for concluding that a lending employer may assert the co-employee immunity provision as a defense in a subrogation action brought by the borrowing employer.[11]

In fact, such a conclusion would defeat the legislature's intent. The legislature is eminently capable of providing for immunity when it so desires. It has demonstrated this with its enactment of the co-employee immunity provision in Minn.Stat. § 176.061, subd. 5 (stating that co-employees are not liable to each other for personal injury absent gross negligence or intentional conduct), and the exclusive remedy provision in Minn.Stat. § 176.031, subd. 1 (providing that an employer's workers' compensation liability is exclusive of any other remedy). The legislature did not, however, grant immunity to a third party engaged in a common enterprise with an employer. On the contrary, it explicitly *provided* for tort liability in the event an injured employee does not seek workers' compensation benefits from his or her employer. In light of the legislature's clear mandate that a third party engaged in a common enterprise with an employer may indeed be liable in an employer's subrogation action, we reject Egan's contention that it is immune from suit based on the questionable combined effect of a doctrine not found within the Act itself and an arguably inapplicable statutory provision. *See Hafner v. Iverson,* 343 N.W.2d 634, 638 (Minn.1984) (refusing to extend co-employee immunity to an employer in a *Lambertson* contribution action because to do so would subvert *Lambertson* ).

---

11. We also note that the co-employee immunity provision helps to prevent injured employees from thwarting the purpose of the exclusive remedy provision. Under the Act, an employer's liability to pay workers' compensation benefits "is exclusive and in the place of any other liability." Minn.Stat. § 176.031 (1996). Therefore, an injured employee who has elected to collect workers' compensation benefits is precluded from suing his or her employer in tort. Prior to the implementation of the co-employee immunity provision, injured employees could circumvent the statutory scheme by suing a co-employee based on simple negligence. This would result in "shift[ing] tort liability from an employer to fellow employee in a manner never intended by the workers' compensation system." Minnesota

Workers' Compensation Study Commission, *A Report to the Minnesota Legislature and Governor,* recommendation 40 at 41 (1979), *quoted in* Jay. Y. BenAnav, *Workers' Compensation Amendments of the 1979 Minnesota Legislature,* 6 Wm. Mitchell L.Rev. 743, 764 (1980). The exclusive remedy provision, however, does not apply to a third party engaged in a common enterprise that does not have statutory liability to pay workers' compensation benefits to the employer's injured employee. Consequently, the preventative function of the co-employee immunity provision is not served by permitting a third party engaged in a common enterprise with an employer to assert it as a defense in the employer's subrogation action.

## IV.

In conclusion, because MBC's non-fault-based subrogation action has no basis in the Minnesota Workers' Compensation Act, we hold that MBC's right to recover workers' compensation benefits from Egan requires a determination that Egan was in fact negligent. Accordingly, we deny MBC's request for costs, disbursements, and attorney fees incurred in this action. This matter is reversed and remanded to the district court for further proceedings consistent with this opinion.

Reversed and remanded.